Steven H. Holinstat
**Proskauer Rose LLP**
Eleven Times Square
New York, NY 10036-8299
(212) 969-3000

Jeff J. Marwil (*pro hac vice pending*)
Brooke H. Blackwell (*pro hac vice pending*)
**Proskauer Rose LLP**
70 West Madison, Suite 3800
Chicago, IL  60602-4342
(312) 962-3550

Safraz W. Ishmael (*pro hac vice pending*)
Christopher J. Deck (*pro hac vice pending*)
**Proskauer Rose LLP**
One International Place
Boston, Massachusetts  02110-2600
(617) 526-9600

*Counsel for Deepak Agarwal, Melina Agarwal a/k/a Melina Ash,
Sheela Agarwal, Vipesh Agarwal, Vishal Agarwal, Daniel Depina,
DIYA Irrevocable Trust, and Depina Consulting, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 |
| CHOXI.COM, INC., | : | |
| | : | Case No. 16-13131-SCC |
| Debtor. | : | |
| | : | |

-----------------------------------------------------------------x

| | | |
|---|---|---|
| TRACY KLESTADT, in his capacity as Plan Administrator of the estate of Choxi.com, Inc., | : : : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. No. 18-01794-SCC |
| -against- | : | |
| | : | Re: Docket No. 1 |
| DEEPAK AGARWAL, *et al.*, | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS BY DEFENDANTS DEEPAK AGARWAL, MELINA AGARWAL A/K/A MELINA ASH, SHEELA AGARWAL, VIPESH AGARWAL, VISHAL AGARWAL, DANIEL DEPINA, DIYA IRREVOCABLE TRUST, AND DEPINA CONSULTING, LLC

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF RELEVANT FACTS .....................................................................................3

    The Ahmed Theft ..................................................................................................................3

    The Depina Consulting Payments ........................................................................................5

    The DIYA Payments .............................................................................................................5

    The Salary Payments ............................................................................................................5

    The Techsys Payments .........................................................................................................6

    The Dawgs Transaction ........................................................................................................7

APPLICABLE LEGAL STANDARD .........................................................................................7

ARGUMENT .................................................................................................................................8

I.      The Complaint Should Be Dismissed Against Deepak, Melina, Vishal, And Vipesh For Insufficient Service of Process ........................................................................8

II.    The PA's Claims For Breach Of Fiduciary Against The Agarwals Should Be Dismissed For Failure To State A Claim (Count I) ..........................................................10

    A.     The Agarwals Are Not Liable For Ahmed's Theft ...............................................10

    B.     The Agarwals Are Not Liable For The Dawgs Transaction ...............................12

    C.     The Agarwals Are Not Liable For The Depina Consulting Payments ................13

    D.     The Agarwals Are Not Liable For The Techsys Payments ..................................13

    E.     The Agarwals Are Not Liable For The DIYA Loan Payments ...........................14

    F.     The Agarwals Are Not Liable For The Salary Payments ....................................15

III.   The PA's Claim To Avoid Constructively Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(B) Should Be Dismissed (Count II) ............................................................17

IV.   The PA's Claim To Avoid Constructively Fraudulent Transfers Under N.Y. Debtor & Creditor Law §§ 273, 274 and 275 Should Be Dismissed (Counts IV-VI) ................................................................................................................................23

V.      The PA's Claim To Avoid Actually Fraudulent Transfers Under N.Y. Debtor &
        Creditor Law § 276 Should Be Dismissed (Count III) ......................................................23

VI.     The PA's Claim To Avoid Transfers Made Within 90 Days Of The Petition Date
        Under 11 U.S.C. § 547(b)(4)(A) Should Be Dismissed (Count VII) ...............................26

VII.    The PA's Claim To Avoid Transfers Made Within 1 Year Of The Petition Date
        Under 11 U.S.C. § 547(b)(4)(B) Should Be Dismissed (Count VIII) .............................27

CONCLUSION...........................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................7, 8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .....................................................................................................7

*Brehm v. Eisner,*
    746 A.2d 244 (Del. 2000) ..........................................................................................17

*Cassano v. Altshuler,*
    186 F. Supp. 3d 318 (S.D.N.Y. 2016) .........................................................................8

*Cohen v. Rosicki, Rosicki & Assocs.,*
    897 F.3d 75 (2d Cir. 2018) ..........................................................................................7

*Daugherty v. Highland Capital Mgmt., L.P.,*
    2018 WL 3217738 (Del. Ch. June 28, 2018) ............................................................10

*DoubleLine Capital LP v. Odebrecht Fin., Ltd.,*
    323 F. Supp. 3d 393 (S.D.N.Y. 2018) .......................................................................21

*Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.,*
    2006 WL 2802092 (E.D.N.Y. Sept. 28, 2006) .........................................................24

*George v. Prof'l Disposables Int'l, Inc.,*
    221 F. Supp. 3d 428 (S.D.N.Y. 2016) .........................................................................8

*Gindi v. Silvershein,*
    1995 WL 347397 (S.D.N.Y. June 8, 1995) ...............................................................25

*Giraldo v. Kessler,*
    694 F.3d 161 (2d Cir. 2012) ........................................................................................8

*Goel v. Bunge, Ltd.,*
    820 F.3d 554 (2d Cir. 2016) ........................................................................................8

*Graham v. Allis-Chalmers Mfg. Co.,*
    188 A.2d 125 (Del. 1963) ....................................................................................11, 15

*Guangzhou Love Live Culture Dev. Ltd. Co. v. Belinda Int'l Ltd.,*
    2018 WL 1800879 (E.D.N.Y. Jan. 24, 2018) ......................................................24, 26

*In re Adler*,
372 B.R. 572 (Bankr. E.D.N.Y. 2007) ........................................................................24, 25, 26

*In re Agriprocessors, Inc.*,
2011 WL 4621741 (Bankr. N.D. Iowa Sept. 30, 2011) ........................................................18

*In re Allou Distribs., Inc.*,
379 B.R. 5 (Bankr. E.D.N.Y.2007) ........................................................................................25

*In re AmerLink, Ltd.*,
2011 WL 864953 (Bankr. E.D.N.C. Mar. 11, 2009) .............................................................18

*In re Bateman*,
2012 WL 3061181 (Bankr. E.D.N.C. July 26, 2012) ............................................................18

*In re Broadway Lumber Co., Inc.*,
168 B.R. 941 (Bankr. W.D. Mo. 1994), *aff'd*, 118 F.3d 1246 (8th Cir. 1997) ......................26

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996) ..................................................................................10, 11, 13

*In re Caremerica, Inc.*,
409 B.R. 737 (Bankr. E.D.N.C. 2009) ..................................................................................19

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009) ..........................................................................................10, 11

*In re Cornerstone Therapeutics, Inc. S'holder Litig.*,
115 A.3d 1173 (Del. 2015) ....................................................................................................12

*In re Crescent Res., LLC*,
2012 WL 195528 (Bankr. W.D. Tex. Jan 23, 2012) .............................................................18

*In re Dreier LLP*,
452 B.R. 451 (Bankr. S.D.N.Y. 2011) .............................................................................20, 22

*In re Garcia*,
494 B.R. 799 (Bankr. E.D.N.Y. 2013) ..................................................................................21

*In re Hydrogen, L.L.C.*,
431 B.R. 337 (Bankr. S.D.N.Y. 2010) ..................................................................................21

*In re Kinbrace Corp.*,
2017 WL 1380524 (S.D.N.Y. Bankr. Apr. 17, 2017) ...........................................................10

*In re M. Fabrikant & Sons, Inc.*,
394 B.R. 721 (Bankr. S.D.N.Y. 2008) ..................................................................................24

*In re PostRock Energy Corp.*,
  2018 WL 4279469 (Bankr. W.D. Okla. Sept. 6, 2018) ........................................18

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2d Cir. 2005)...................................................................................23

*In re Sirius XM S'holder Litig.*,
  2013 WL 5411268 (Del. Ch. Sept. 27, 2013) ......................................................10

*In re Trinsum Group, Inc.*,
  466 B.R. 596 (Bankr. S.D.N.Y. 2012) ..................................................................7

*In re United Tax Grp., LLC*,
  2016 WL 7235622 (Bankr. D. Del. Dec. 13, 2016) ..............................................18

*In re Vivaro Corp.*,
  524 B.R. 536 (Bankr. S.D.N.Y. 2015) ................................................................21

*In re Walt Disney Co.*,
  906 A.2d 27 (Del. 2006) ......................................................................................12

*In re Walt Disney Co. Derivative Litig.*,
  907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006)............................17

*Lyondell Chem. Co. v. Ryan*,
  970 A.2d 235 (Del. 2009) ....................................................................................12

*Naraynan v. Sutherland Global Holdings, Inc.*,
  2018 WL 2234884 (W.D.N.Y. May 16, 2018)......................................................10

*Progressive Credit Union v. City of New York*,
  889 F.3d 40 (2d Cir. 2018).....................................................................................7

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)......................................................................................8

*Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*,
  81 F.3d 1224 (2d Cir. 1996)..................................................................................10

*Stone v. Ritter*,
  911 A.2d 362 (Del. 2006) ................................................................................10, 11

*Waite v. Schoenbach*,
  2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010) ......................................................18

**STATUTES**

8 Del. C. § 102(b)(7) ........................................................................................................12

10 Del. C. § 8106(a) .........................................................................................................10

11 U.S.C. § 547 .................................................................................................................26

11 U.S.C. § 547(b)(3) ........................................................................................................27

11 U.S.C. § 547(b)(4)(A) ...................................................................................................26

11 U.S.C. § 547(b)(4)(B) ...................................................................................................27

11 U.S.C. § 547(c)(2) .........................................................................................................26

11 U.S.C. § 548 .................................................................................................................18

11 U.S.C. § 548(a)(1)(B) .........................................................................................17, 18, 23

11 U.S.C. § 548(a)(1)(B)(ii)(I)-(III) ..................................................................................18

11 U.S.C. § 548(a)(1)(B)(ii)(IV) .......................................................................................18

11 U.S.C. § 550(a) .......................................................................................................18, 19

New York's Debtor & Creditor Law §§ 273-75 .................................................................23

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7004 .....................................................................................................1, 8

Fed. R. Bankr. P. 7004(b)(1) ...............................................................................................9

Fed. R. Bankr. P. 7012 .................................................................................................1, 7, 8

Fed. R. Civ. P. 4 ..................................................................................................................8

Fed. R. Civ. P. 8(a) .......................................................................................................19, 24

Fed. R. Civ. P. 9(b) ...................................................................................................23, 24, 26

Fed. R. Civ. P. 12(b)(5) ...................................................................................................1, 8

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 7

Declaration with Reservations to the Hague Convention by India (Nov. 23, 2006),
    https://www.hcch.net/en/instruments/conventions/status-
    table/notifications/?csid=984&disp=resdn ..................................................................9

Defendants Deepak Agarwal ("<u>Deepak</u>"), Melina Agarwal a/k/a Melina Ash ("<u>Melina</u>"), Sheela Agarwal ("<u>Sheela</u>"), Vipesh Agarwal ("<u>Vipesh</u>"), Vishal Agarwal ("<u>Vishal</u>") (collectively, the "<u>Agarwals</u>"), Daniel Depina ("<u>Dan</u>"), the DIYA Irrevocable Trust ("<u>DIYA</u>"), and Depina Consulting, LLC ("<u>Depina Consulting</u>") (all, collectively, the "<u>Defendants</u>") respectfully submit this memorandum of law in support of their motion to dismiss the adversary complaint (the "Complaint") filed by Plaintiff Tracy Klestadt, in his capacity as Plan Administrator of the Estate of Choxi.com, Inc. (the "<u>PA</u>"). The PA's Complaint should be dismissed because even accepting all the allegations as true (which they are not), the Complaint fails to set forth a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("<u>FRCP</u>"), and Rule 7012 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"). Additionally, with respect to at least Deepak, Melina, Vipesh, and Vishal, service was insufficient under FRCP 12(b)(5) and Bankruptcy Rule 7004.

## <u>PRELIMINARY STATEMENT</u>

The Complaint is an improper scattershot attempt to attack as illegitimate almost every transfer by Choxi.com, Inc. (the "<u>Debtor</u>" or the "<u>Company</u>"), regardless of whether each Defendant received, benefitted from, or was even aware of each transfer. The serious allegations set forth in the Complaint, which are divorced from the true facts, are, in any event, vague, conclusory, and legally deficient to support any of the claims asserted by the PA, mandating the dismissal of the Complaint in its entirety for the reasons discussed herein.

Members of the Agarwal family founded the Company, were majority owners thereof, and through their hard work and determination, guided the Company to a position where it increased its annual revenues in a two-year period from $9 million to approximately $340 million. It belies

logic, therefore, that the Agarwals would then embark on a scheme to sabotage their Company and drive it into bankruptcy, forfeiting their majority interest therein.

Adding insult to injury, the PA seeks to hold the Agarwals liable for a fraudulent scheme by Iftikar Ahmed ("Ahmed") to siphon millions of dollars from the Company, a scheme that the PA acknowledges Ahmed kept hidden from the Agarwals through a series of fraudulent representations and omissions. The PA also seeks to claw back virtually every dollar of salary paid to the Agarwals since 2012 on the grounds that every payment over the last four years somehow constitutes a breach of fiduciary duty, a fraudulent transfer, or a preferential transfer. He then, in contradictory fashion, attacks the payments to DIYA on the grounds that they are fraudulent transfers, *i.e.*, gratuitous payments to equity holders, but *simultaneously* contends that they are preferential transfers for the payments on an antecedent debt for repayment of loan. Apparently, the PA either doesn't know or can't decide if DIYA holds debt or equity in the Debtor, so pleads both in completely contradictory fashion.

Lastly, the PA, with no firsthand knowledge of the Debtor's business, purports to attack a number of business decisions by the Debtor and to hold the Agarwals liable for those decisions, without trying to understand the nature of these transactions and why they were beneficial to the *Debtor* – not to the Agarwals.

The Company (f/k/a NoMoreRack.com) was founded in 2010 by members of the Agarwal family as an online retailer offering discount brand name and non-brand name merchandise, including bed and bath goods, home décor, kitchenware, furniture, watches, jewelry, apparel, electronics and computers, sporting goods, and designer accessories, among other products, which it sold online. (Complaint ("Compl.") ¶¶ 26-28.)[2] In 2011, the Company's sales were $9 million and skyrocketed to approximately $340 million by 2013. (*Id.* ¶ 29.)

In October 2016, the Company ceased its operations due to annual operating losses between $7.4 and $21 million. (*Id.* ¶ 30.) On November 10, 2016 (the "Petition Date"), an involuntary Chapter 7 petition was filed against the Company by certain of its creditors, which was later converted to a Chapter 11 case. (*Id.* ¶¶ 18, 20.) On December 18, 2017, the Bankruptcy Court entered its Order Confirming Debtor's Chapter 11 Plan of Liquidation and Granting Related Relief, and the PA was appointed pursuant thereto. (*Id.* ¶¶ 22-25.)

**The Ahmed Theft**

The PA contends that Ahmed (a separately named defendant who is not part of the present defense group) through a series of lies and omissions, manipulated the Company's successive rounds of financings to steal approximately $10.9 million from the Company. In particular, on November 13, 2012, the Company issued Series A Redeemable Convertible Preferred Stock (the "Series A Stock") to raise capital to expand the Company's sales, and for marketing and R&D purposes (the "Series A Funding"). (*Id.* ¶¶ 32, 37.) Giosis Holdings, Inc. ("Giosis"), a portfolio

---

[1] Defendants dispute many of the "facts" alleged in the Complaint, but assume the truth of those allegations solely for purposes of this motion to dismiss.

[2] A copy of the Complaint is annexed as **Exhibit A** to the Declaration of Steven H. Holinstat, dated March 1, 2019 (the "Holinstat Decl.")

company of Oak Investment Partners ("Oak"), purchased $150,000 worth of Series A Stock. (*Id.* ¶ 36.) As a result, Ahmed, a general partner of Oak, was appointed to the Company's board of directors. (*Id.* ¶¶ 40-41.)

Days later, Ahmed demanded that Giosis be permitted to invest an additional $2 million at the same price as a condition of him remaining on the Company's board and for Oak staying actively involved. (*Id.* ¶¶ 45-46.) The Company agreed, and on November 26, 2012, Giosis purchased an additional $2 million worth of Series A Stock. (*Id.* ¶¶ 48-49, 54.) The PA alleges that Giosis, however, did not approve the purchase, and instead, Ahmed opened an account in Giosis' name; paid the $2 million from this account; kept the stock for himself; and paid the $2 million back to Giosis in June 2013 after its value significantly increased. (*Id.* ¶¶ 55-59.)

On July 15, 2013, Ahmed temporarily resigned from the Company's board to lead negotiations on behalf of certain investors for a new investment in the Company (the "Series B Funding"). (*Id.* ¶¶ 63, 77.) The PA alleges that Ahmed manipulated the process to cause most of the non-Oak-related investors to back out. (*Id.* ¶¶ 67-70.) Ahmed then falsely represented that Oak would only make a $25 million investment if the Company repurchased Giosis' Series A Stock (secretly owned by Ahmed) because of a non-existent Oak policy that prohibited Oak from investing in the Company at a different valuation level than Giosis. (*Id.* ¶¶ 71-73, 87.) On October 8, 2013, the Series B Funding closed; Oak's affiliate, Oak Investment Partners XIII, LP (the "Oak Fund"), invested $25 million; Ahmed was reappointed to the Company's board; and the Company repurchased Giosis' Series A Stock for about $10.9 million, which money was transferred into an account Ahmed opened in Giosis' name days before the Series B Funding closed and was later transferred to a joint account with Ahmed's wife (the "Ahmed Theft"). (*Id.* ¶¶ 74-76, 78-81, 84-85, 88-90.)

## Other Transfers

In addition to the Ahmed Theft, the PA seeks to hold the Agarwals liable for a number of other unrelated transfers that were made in the ordinary course of the Company's operations during the period 2012 through the Petition Date.

## The Depina Consulting Payments:

In 2012, the Company entered into a Services Agreement with Depina Consulting to provide customer services. The PA claims that Depina Consulting was only entitled to receive $8,000/month, but was paid an amount in excess of this monthly fee. (*Id.* ¶¶ 172-73.) In particular, the PA claims that from 2012 to the Petition Date, the Debtor paid Depina Consulting $653,826 (the "Depina Consulting Payments"). (*Id.* ¶¶ 175-76.)

## The DIYA Payments:

The PA claims that DIYA is a trust for Deepak's and Sheela's benefit that received $525,000 from the Debtor between 2012 and the Petition Date (the "DIYA Loan Payments"). (*Id.* ¶¶ 155-57.) In contradictory fashion, the PA claims these payments were both (a) gratuitous transfers for no value (*id.* ¶ 158), and (b) made on account of an antecedent debt (*i.e.*, a loan) owed by the Debtor to DIYA, as evidenced by a Promissory Note, dated September 25, 2015 (the "DIYA Note") (*id.* ¶¶ 158 n.4, 253; Declaration of Deepak Agarwal, dated February 27, 2019 (the "Deepak Decl."), Ex. 1).

## The Salary Payments:

Deepak: The PA contends that Deepak, as CEO of a company with annual sales of $340 million, was not entitled to any of his $360,000 annual salary – *which amounts to about 0.1% of the Company's annual sales* – based on the PA's vague and conclusory statements that Deepak was unresponsive to the Company's needs, unreachable and failed to perform his duties as CEO.

(*Id.* ¶¶ 8, 29, 129-34.)

Melina:  The PA similarly argues that Melina, the Chief Merchandising Officer of an online retailer, was not entitled to any of her annual salary (ranging from $150,000 to $220,000), based on the PA's equally vague and conclusory statements that Melina was not acting in the Company's best interests.  (*Id.* ¶¶ 9, 29, 150-54.)

Vishal:  The PA further claims that Vishal, an Executive Vice President and Chief Marketing Officer, was not entitled to any of his $300,000 annual salary, based on the PA's unsupported assertion that he did not perform his duties, and spent time working on a start-up company while he was also working for the Company.  (*Id.* ¶¶ 12, 135-43.)

Vipesh:  The PA further argues that Vipesh, the COO, was not entitled to any of his $330,000 annual salary, based on the PA's unsupported assertion that he failed to communicate with suppliers, abandoned his duties as COO, was generally unresponsive to the Company and its employees, and was working with Vishal on his start-up business.   (*Id.* ¶¶ 11, 144-49.)

**The Techsys Payments:**

In January 2014, the Company entered into a Services Agreement with defendant Techsys Marketing, Inc. ("Techsys"), a company in which the PA states, upon information and belief, that certain unidentified members of the Agarwal family had an equally unidentified relationship with. (*Id.* ¶¶ 17, 106.)  The PA claims that Dan (the Company's Chief of Customer Service) would send Techsys invoices to Vipesh, who would then revise the invoices to increase the amounts due and include services that were either unnecessary or duplicative of services the Company provided for itself.  Vipesh then allegedly forwarded the marked-up invoices to Rohit Lalwani (the Debtor's VP of Finance), which resulted in the Company making monthly payments to Techsys in excess of the monthly fee of $125,000.  (*Id.* ¶¶ 11, 14, 105-16, 122.)  As a result, the PA claims that from

January 2012 to the Petition Date, the Company allegedly made about $8 million in improper transfers to Techsys (the "Techsys Payments"). (*Id.* ¶¶ 124, 128.)

**The Dawgs Transaction:**

A few months prior to the Petition Date, the Company sold 125,000 customer records and email contacts to USA Dawgs, Inc. ("Dawgs") for a $125,000 reduction in the Company's account payables to Dawgs (the "Dawgs Transaction"). (*Id.* ¶¶ 163-67.) Even though the Company's account payable to Dawgs was reduced by $125,000, the PA alleges in conclusory fashion that the Company did not receive reasonably equivalent value from Dawgs. (*Id.* ¶¶ 163, 170-71.)

**APPLICABLE LEGAL STANDARD**

Under FRCP 12(b)(6) (made applicable under Bankruptcy Rule 7012), a complaint must be dismissed for failure to state a claim upon which relief may be granted if it fails to set forth sufficient factual allegations to support a plausible right to recovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Cohen v. Rosicki, Rosicki & Assocs.*, 897 F.3d 75, 80 (2d Cir. 2018) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). A claim to relief is plausible when the factual allegations in a complaint "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. 2018). In stating the grounds for entitlement to relief, the plaintiff must plead "more than labels and conclusions." *Twombly*, 550 U.S. at 545; *In re Trinsum Group, Inc.*, 466 B.R. 596, 605 (Bankr. S.D.N.Y. 2012) (a court is not bound to accept as true a legal conclusion couched as a factual allegation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, "[w]here a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

In assessing the viability of a claim, a court may also consider documents that are "integral to the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect." *Id.* A court may consider "documents that the plaintiffs either possessed or knew about and upon which [he] relied in bringing the suit…." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). A court may also take judicial notice of "relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

## ARGUMENT

### I. The Complaint Should Be Dismissed Against Deepak, Melina, Vishal, And Vipesh For Insufficient Service of Process

In considering a motion under FRCP 12(b)(5) and Bankruptcy Rule 7012 to dismiss for insufficient service of process, courts look to FRCP 4 and Bankruptcy Rule 7004, which govern the content, issuance, and service of a summons in bankruptcy court. Fed. R. Civ. P. 4; Fed. R. Bankr. P. 7004; *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016); *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016). In resolving such a motion, courts will look to matters outside the complaint, *e.g.*, defendants' declarations, to determine whether there was insufficient service of process. And, once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service. *George*, 221 F. Supp. 3d at 432; *Cassano*, 186 F. Supp. 3d at 320.

Here, the PA has failed to properly serve Deepak, Melina, Vishal, and Vipesh with service of process requiring the dismissal of the Complaint against each of them. For example:

**Deepak and Melina:**  The PA's Certificate of Service (Declaration of Steven H. Holinstat, dated February 27, 2019 (the "Holinstat Decl."), Ex. B) states that he served Deepak and Melina by mailing the summons and Complaint by first class mail to them at 100 Barclay St., Apt. 29A, New York, NY.  Deepak and Melina, however, do not reside at that address, nor do they live in the United States.  (Deepak Decl. ¶¶ 2-5; Declaration of Melina Agarwal, dated February 27, 2019, ¶¶ 2-5.)  Thus, service of process was improper under Bankruptcy Rule 7004(b)(1) and FCRP 4(e)(2)(B).

**Vishal:**  The PA's Certificate of Service and Supplemental Certificate of Service (Holinstat Decl. Exs. B-C) recite that the PA served Vishal by mailing the summons and Complaint by first class mail to him at two New York City addresses.  Vishal, however, does not reside at any of the two residences at which the PA attempted to serve him.  (Declaration of Vishal Agarwal, dated February 27, 2019, ¶¶ 2-6.)  Thus, service of process was improper under Bankruptcy Rule 7004(b)(1) and FCRP 4(e)(2)(B).

**Vipesh:**  The PA's Certificate of Foreign Mailing (Holinstat Ex. D) recites that he served Vipesh by mailing the summons and Complaint by Federal Express to him at an address in Canada. Vipesh, however, resides in India – not Canada.  (Declaration of Vipesh Agarwal, dated February 28, 2019, ¶¶ 2-6.)  Moreover, India does not allow service by mail.  *See* Declaration with Reservations to the Hague Convention by India (Nov. 23, 2006), www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=984&disp=resdn. Service of process is thus insufficient against Vipesh because he was not served in India in accordance with the Hague Convention.

## II. The PA's Claims For Breach Of Fiduciary Against The Agarwals Should Be Dismissed For Failure To State A Claim (Count I)

### A. The Agarwals Are Not Liable For Ahmed's Theft

The PA claims that the Agarwals breached their fiduciary duty failing to uncover the Ahmed Theft. This claims is meritless for the following reasons.

First, the PA's claim is untimely under Delaware's three-year statute of limitations.[3] *See Daugherty v. Highland Capital Mgmt., L.P.*, 2018 WL 3217738, at *7 (Del. Ch. June 28, 2018); *In re Sirius XM S'holder Litig.*, 2013 WL 5411268, at *1 (Del. Ch. Sept. 27, 2013); 10 Del. C. § 8106(a). According to the PA, the Ahmed Theft occurred on October 18, 2013 (Compl. ¶ 84), and the statute of limitations on any breach of fiduciary duty claim expired by October 18, 2016. Yet, the PA did not assert such claim until December 4, 2018 – more than 2 years later.

Second, this is a classic *Caremark* claim "predicated upon ignorance of liability creating activities within the corporation." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 972 (Del. Ch. 1996). To hold directors liable for failing to discover and take action to correct wrongdoing by others (here Ahmed's wrongdoing) is "possibly the most difficult theory in corporat[e] law upon which a plaintiff might hope to win judgment." *Stone v. Ritter*, 911 A.2d 362, 372 (Del. 2006); *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 125 (Del. Ch. 2009); *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d at 967.

An officer or director is only liable for such oversight liability where: "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having

---

[3] Delaware law applies to the PA's breach of fiduciary duty claims pursuant to New York's internal affairs doctrine, which provides that claims for breach of fiduciary duty against a corporation's officers and directors are decided in accordance with the law of the debtor's state of incorporation. *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996); *Naraynan v. Sutherland Global Holdings, Inc.*, 2018 WL 2234884, at *8 (W.D.N.Y. May 16, 2018); *In re Kinbrace Corp.*, 2017 WL 1380524, at *7 (S.D.N.Y. Bankr. Apr. 17, 2017). Here, the Debtor is a Delaware corporation. (Compl. ¶ 7.)

implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370; *Citigroup* , 964 A.2d at 121-22; *Caremark*, 698 A.2d at 972. "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations. Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith." *Stone*, 911 A.2d at 370.

Here, the Complaint is utterly devoid of any factual allegations demonstrating that the Agarwals either (a) failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee the Company's operations thus disabling themselves from being informed of risks or problems requiring their attention. Instead, the Complaint relies on conclusory allegations that the Agarwals are liable for failing to adequately investigate, become informed about, monitor, understand and/or supervise Ahmed's activities so as to uncover his scheme. (*See, e.g.*, Compl. ¶¶ 44, 60, 91, 103.) The Supreme Court of Delaware has long ago found such generic accusations insufficient, holding that "absent cause for suspicion there is no duty upon the directors to install and operate a corporate system of espionage to ferret out wrongdoing which they have no reasons to suspect exists." *Graham v. Allis-Chalmers Mfg. Co.*, 188 A.2d 125, 130 (Del. 1963). In other words, such vague, conclusory allegations are wholly insufficient to support a *Caremark* claim against the Agarwals. *See id.*

Third, the PA's claim also fails against each of the Agarwals because the Company's Second Amended and Restated Certificate of Incorporation includes the following provision exculpating the Company's directors from any breach of fiduciary duty claims:

**NINTH:**   To the fullest extent permitted by law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director…

(Deepak Decl. Ex. 2.)

This provision is in accordance with 8 Del. C. § 102(b)(7), which permits companies to exculpate directors from monetary liability for breaches of the duty of care, even where directors have been grossly negligent. 8 Del. C. § 102(b)(7); *In re Walt Disney Co.*, 906 A.2d 27, 64-65 (Del. 2006). Overcoming an exculpatory provision requires "an extreme set of facts." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009). "If the directors failed to do all that they should have under the circumstances, they breached their duty of care," for which they are expressly exculpated. *Id.* "[T]here is a vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties." *Id.* at 243. "Accordingly, to plead a non-exculpated breach of the duty of care claim here, [plaintiff] must plausibly allege bad faith." *In re Cornerstone Therapeutics, Inc. S'holder Litig.*, 115 A.3d 1173, 1179-81 (Del. 2015).

The conduct alleged in the Complaint falls squarely within the exculpatory clause in the Company's Second Amended and Restated Certificate of Incorporation.

### B.    The Agarwals Are Not Liable For The Dawgs Transaction

The PA claims that the Agarwals breached their fiduciary duty by selling 125,000 customer records and email contacts to Dawgs in exchange for a $125,000 reduction in the Company's account payable to Dawgs. (Compl. ¶¶ 163-67.) This claim is meritless.

It is well-settled under Delaware law that directors cannot be held liable for business decisions taken in good faith even if those decisions, in hindsight, are deemed to be "substantively wrong, or degrees of wrong, extending through 'stupid' to 'egregious' or 'irrational'" because to hold otherwise "would expose directors to substantive second guessing by ill-equipped judges or

juries, which would in the long-run, be injurious to investor interests." *Caremark*, 698 A.2d at 967-68. That is precisely what the PA seeks to do here by contending, in essence, that the Agarwals should be liable for a transaction that the PA deems to be nothing more than a "bad deal." This claim is also subject to dismissal under the Company's exculpation provision in its Second Amended and Restated Certificate of Incorporation. (*See* discussion in Point II(A), *supra*.)

## C. The Agarwals Are Not Liable For The Depina Consulting Payments

The PA alleges that the Agarwals breached their fiduciary duty by "failing to investigate, become informed about, monitor and supervise the Debtor's payments to Depina Consulting and/or Dan[,]" as the alleged subsequent transferee of such payments. (Compl. ¶ 178.) This claim is legally deficient for two reasons.

First, this claim is subject to dismissal against the Agarwals under the exculpation provision in the Company's Second Amended and Restated Certificate of Incorporation. (*See* discussion in Point II(A).)

Second, to the extent the PA's claim is that the Agarwals failed to investigate, become informed about, monitor and supervise the Company's payments to Depina Consulting, this is another *Caremark* claim in which the PA has failed to allege the necessary factual predicate to assert such a claim. (Compl. ¶ 178.)

Third, any claim must be limited, at most, to $43,440.00. Under Delaware's three-year statute of limitations for breach of fiduciary duty claims, the PA is limited to challenging payments that were made on or after December 4, 2015, *i.e.*, three years prior to the commencement of this action. The only such payments identified in the Complaint during this period total $43,440.00. (Compl. ¶ 240.)

## D. The Agarwals Are Not Liable For The Techsys Payments

The PA alleges that the Agarwals breached their fiduciary duty in connection with the

13

Techsys Payments. In particular, the PA alleges that Vipesh caused the Company to make payments to Techsys over and above what it was otherwise due under the Techsys Services Agreement, including payments for duplicative, unperformed, or unneeded services. (Compl. ¶¶ 106-124.) The PA further alleges that the remaining Agarwals "failed to properly investigate, become informed about, monitor, understand and/or supervise the Company's relationship with Techsys." (*Id.* ¶ 125.) This claim is also deficient.

First, this claim is subject to dismissal against the Agarwals under the Company's Second Amended and Restated Certificate of Incorporation. (*See* discussion in Point II(A).)

Second, to the extent the PA's claim is that the Agarwals failed to investigate, become informed about, monitor and supervise the Company's payments to Techsys, this is another *Caremark* claim in which the PA has failed to allege the necessary factual predicate to assert such a claim. (*Id.* ¶ 125.)

Third, to the extent Vipesh is not exculpated for his conduct under the Company's Second Amended and Restated Certification of Incorporation (which he is), any claim against him must be limited to those payments identified by the PA has having been made after December 4, 2015, *i.e.*, $1,846,700. (Compl. ¶ 250.)

### E.     The Agarwals Are Not Liable For The DIYA Loan Payments

In contradictory fashion, the PA claims that the Company made payments to DIYA (for the ultimate benefit of Deepak and Sheela) that were somehow both (a) gratuitous transfers (Compl. ¶ 158), and (b) made on account of an antecedent debt (*i.e.*, a loan) owed by the Company to DIYA (*id.* ¶¶ 158 n.4, 253; Deepak Decl. Ex. 1). The PA further alleges that the Agarwals were aware of DIYA's relationship to Deepak and Sheela and ignored "red flags about the DIYA Transfers". (*Id.* ¶ 160.) This claim is deficient as a matter of law.

First, the PA nowhere explains why the payments were allegedly improper, which is tellingly in stark contrast to the PA's allegations concerning the Techsys Payments. Indeed, the PA itself cannot decide if the payments were gratuitous transfers made to DIYA or repayments of amounts due under a loan. Moreover, while the PA claims that the Agarwals supposedly ignored "red flags" about the DIYA transfers, it nowhere identifies what those red flags are or how they would have triggered an obligation by any of the Agarwals to investigate or take any other action. In short, the PA's conclusory allegations fall far short of providing the Agarwals with the necessary notice of the wrongful conduct of which each is being accused. *Graham*, 188 A.2d at 130.

Second, this claim is subject to dismissal against the Agarwals under the Company's Second Amended and Restated Certificate of Incorporation. (*See* discussion in Point II(A).) And, to the extent any of the Agarwals were unaware of these payments, they constitute invalid *Caremark* claims.

Third, if the Court does not dismiss this claim in its entirety, then the claim should be limited, at most, to a recovery of $400,000, *i.e.*, those DIYA Loan Payments that were made after December 4, 2015, and only from those defendants that were aware of the DIYA payments and that they were allegedly improper. (Compl. ¶ 250.)

F.    **The Agarwals Are Not Liable For The Salary Payments**

The PA next claims that all of the Agarwals breached their respective fiduciary duties because the Company paid salaries and other benefits to its officers and directors, *i.e.*, Melina, Deepak, Vipesh, and Vishal. This claim is also baseless.

First, the Complaint fails to adequately plead how Melina, Deepak, Vipesh, and Vishal breached their fiduciary duties in receiving their respective salary and other benefits. For example, the PA alleges that Melina was not entitled to any salary because (a) she was not acting in the best

interests of the Debtor, and (b) failed to provide the Debtor with adequate consideration for her work. (Compl. ¶¶ 151, 153.) The PA's allegations contain the same type of generalized allegations relating to Deepak, Vipesh, and Vishal.[4]  Indeed, the Complaint fails to identify even a single example of any specific task any of these individuals were obligated, but supposedly failed, to perform, and how that failure harmed the Company.  Moreover, the argument that these individuals, who were running the Company's operations, were not entitled to be paid a single cent because they allegedly provided no benefit to the Company is inconsistent with the PA's allegation that the Company's sales skyrocketed from $9 million in 2011 to $340 million by 2013 – a time period encompassed by the PA's claims to claw back the salaries of the individuals responsible for the Company's meteoric growth.  (*Id.* ¶ 29).

Second, to the extent to the extent the PA is claiming that each of the Agarwals failed to discover and then prevent such purportedly improper payments to Melina, Deepak, Vipesh, and Vishal, this would constitute a *Caremark* claim for which the PA has not alleged the necessary factual predicate.  (*See* discussion in Point II(A).)

Third, to the extent the Agarwals were negligent in allowing such payments to be made, then such claim would be subject to dismissal under the Company's Second Amended and Restated Certificate of Incorporation.  (*Id.*)

Fourth, to the extent the Agarwals were aware of and agreed to make the payments to Melina, Deepak, Vipesh, and Vishal, then such claim would be barred under Delaware's business judgment rule.  Indeed, decisions as to hiring, retaining, and compensation of management are quintessential decisions subject to the business judgment rule.  *See, e.g., Brehm v. Eisner*, 746

---

[4] *See, e.g.*, Compl. ¶¶ 130-34 (conclusory allegations that Deepak failed to provide services to the Debtor); ¶¶ 135-40 (conclusory allegations that Vishal did not perform his duties as Chief Marketing Office and was simultaneously working on an unrelated web application); ¶¶ 141-48 (conclusory allegation that Vipesh failed to communicate with unidentified suppliers, abandoned duties as COO, and was generally unresponsive to the Debtor and its employees).

A.2d 244, 263 (Del. 2000); *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 762 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).

Finally, to the extent any claims were viable (which they are not), they must be limited to those payments alleged to have been made within the applicable three-year statute of limitations. In particular, the claim against: (a) Melina should be limited to $155,684.17; (b) Deepak should be limited to $273,905.94; (c) Vipesh should be limited to $139,615.41; and (d) Vishal should be limited to $166,142.24. (Compl. ¶ 250.)

## III. The PA's Claim To Avoid Constructively Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(B) Should Be Dismissed (Count II)

The PA seeks to seeks to claw back – as constructively fraudulent transfers from each of the Defendants – those portions of the Ahmed Theft, Techsys Payments, Depina Consulting Payments, DIYA Loan Payments, and the Salary Payments that were made within the last two years under 11 U.S.C. § 548(a)(1)(B), which provides that:

> The [PA] may avoid any transfer …of an interest of the debtor in property … that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B). This claims is deficient for the reasons discussed below.

<u>The Ahmed Theft:</u> The Defendants are not liable for the Ahmed Theft. First, the claim is time barred because it occurred on October 18, 2013 – more than two years prior to the Petition Date. (Compl. ¶¶ 18, 85-89.)

Second, the PA does not allege that any of the Defendants were initial, immediate, or mediate transferees of the Ahmed Theft or that they benefitted from the theft, and thus cannot be liable for such transfer. 11 U.S.C. § 550(a).

Third, the PA fails to sufficiently allege that the Debtor was insolvent at the time of the Ahmed Theft under any of the tests for insolvency enunciated in 11 U.S.C. § 548(a)(1)(B)(ii)(I)-(III).[5] To satisfy this prong, the PA must allege specific facts demonstrating a reasonable basis to conclude that the Debtor was insolvent, and merely regurgitating the definitions of insolvency set forth in the statute is insufficient. *See e.g.*, *Waite v. Schoenbach,* 2010 WL 4456955, at *7 (S.D.N.Y. Oct. 29, 2010) ("Plaintiff's allegations that the 'transfers were made without fair consideration' and 'rendered Defendants insolvent' are conclusory allegations that are insufficient to withstand a motion to dismiss.").[6] Here, the PA simply asserts that "[a]t the time that the Debtor entered into all of the transactions set forth in this Complaint, the Debtor was insolvent in that its

---

[5] 11 U.S.C. § 548(a)(1)(B)(ii)(IV) is inapplicable because the PA does not allege that the Ahmed Theft was a transfer to an insider under an employment contract and not in the ordinary course of business. The same is true for the Techsys Payments, the Depina Consulting Payments, and the DIYA Loan Payments.

[6] *See also In re PostRock Energy Corp.*, 2018 WL 4279469, at *7 (Bankr. W.D. Okla. Sept. 6, 2018) (dismissing claim under § 548 because the trustee's "minimal allegations of insolvency, as set forth in the Complaint, are insufficient to satisfy the *Twombly/Iqbal* plausibility standard," as there were no "factual allegations whatsoever to support the alternative legal conclusions in Section 548(a)(1)(B)(ii) that the … Debtors were either (i) unreasonably undercapitalized with respect to transactions they were undertaking or (ii) were intending to or incurring debts beyond their ability to repay.") *In re United Tax Grp., LLC*, 2016 WL 7235622, at *3-4 (Bankr. D. Del. Dec. 13, 2016) (holding that plaintiff must allege "specific facts showing the debtor's financial position and the value of what was received in exchange for the transfer," and finding that a trustee's allegation that the Debtor was balance sheet insolvent was too conclusory to demonstrate insolvency under § 548.); *In re Bateman*, 2012 WL 3061181, at *3-4 (Bankr. E.D.N.C. July 26, 2012) ("[F]or the Trustee to be successful in this claim based on § 548(a)(1)(B), the Trustee must allege facts sufficient to show that the Debtor was insolvent on the date of the transfer."); *In re Crescent Res., LLC*, 2012 WL 195528, at *8 (Bankr. W.D. Tex. Jan 23, 2012) (dismissing fraudulent conveyance claims where plaintiff did no more than mirror the elements of § 548, and made only general conclusory allegations of insolvency and reasonably equivalent value); *In re Agriprocessors, Inc.*, 2011 WL 4621741, at *6 (Bankr. N.D. Iowa Sept. 30, 2011) ("[A] trustee's complaint cannot merely make a conclusory statement that a debtor was insolvent[; rather it] must contain enough factual information to plausibly show the debtor's liabilities exceeded assets at the time of the transfers.") (citations omitted); *In re AmerLink, Ltd.*, 2011 WL 864953, at *4 (Bankr. E.D.N.C. Mar. 11, 2009) ("Conclusory statements that the transfers were made while the debtor was insolvent fail to satisfy the requirements under *Iqbal*."); *In re Caremerica, Inc.*, 409 B.R. 737, 752 (Bankr. E.D.N.C. 2009) (holding that trustee's assertion that each transfer "was made while the [t]ransferor was insolvent," without any factual assertions supporting the debtor's insolvency fails to satisfy the Supreme Court's pleading requirements in Rule 8(a) under *Iqbal*).

total liabilities exceeded the fair value of their assets and/or were rendered insolvent as a result of these transactions." (Compl. ¶ 179.) And in each of its causes of action to void the transfers at issues as fraudulent conveyances or preferences, the PA either regurgitates this generic legal conclusion and/or the relevant statutory definition of insolvency.[7] Such vague, conclusory and generic allegations are woefully insufficient to plead a cause of action under *Iqbal*.

The Techsys Payments: The Defendants are also not liable for the Techsys Payments. First, for the reasons discussed above, the PA fails to sufficiently allege that the Debtor was insolvent at the time of the Techsys Payments.

Second, to assert a viable claim against the Defendants, the PA must allege that each Defendant was either an initial, immediate or mediate transferee of the transfer, or an entity for whose benefit the transfer was made. 11 U.S.C. § 550(a). Here, the PA does not allege that any of the Defendants were initial, immediate or mediate transferees. Instead, he alleges that the transfer was done to benefit the Agarwals. (Compl. ¶¶ 117, 122.) However, merely alleging that a transfer was done to benefit a party is insufficient absent allegations that the benefit is "'direct, ascertainable and quantifiable' and must correspond to, or be commensurate with, the value of the property that was transferred," and "'[i]ncidental, unquantifiable, or remote' allegations of benefit are not sufficient." *See In re Dreier LLP*, 452 B.R. 451, 465-66 (Bankr. S.D.N.Y. 2011) (dismissing fraudulent conveyance claim on a motion to dismiss where the trustee failed to adequately allege facts demonstrating the direct, ascertainable and quantifiable benefit to be

---

[7] (*See* Compl. ¶ 201 ("At the time the Fraudulent Transfer were made, the Debtor was insolvent in that its total liabilities exceeded the fair value of their assets."); ¶ 215 (same); ¶ 220 ("The Debtor was insolvent at the time that the Fraudulent Transfers were made to Defendants and/or was rendered insolvent due to same."); ¶ 225 ("As a result of the Fraudulent Transfers, Defendants caused the Debtor to engage or be about to engage in a business transaction for which the property remaining in its hands was an unreasonably small amount of capital."); ¶ 231 ("As a result of the Fraudulent Transfers, the Defendants, and therefore the Debtor, intended or believed that it was going to incur debts beyond its ability to pay as they matured."); ¶ 254 ("The Debtor was insolvent at the time of the One Year Preferential Transfers in that its liability exceeded the fair value of its assets.")

received by the defendant).  Here, the Complaint is devoid of the requisite factual allegations necessary to plead a claim that the transfers were made to "benefit" the Agarwals.

The Depina Consulting Payments:  The Defendants are similarly not liable for the Depina Consulting Payments.  First, as noted, the PA fails to sufficiently allege that the Debtor was insolvent at the time of any of the Depina Consulting Payments.

Second, other than Dan, the Complaint does not allege that any other Defendant was an initial, immediate or mediate transferee of the Depina Consulting Payments, or an entity for whose benefit they were made.  As for Dan, the Complaint simply alleges in conclusory fashion that "[u]pon information and belief, [Dan] benefited from the Depina Transfers and/or was the immediate or mediate transferees of such transfers."  (Compl. ¶ 177.)  Such a conclusory allegation is patently insufficient to allege any direct, ascertainable and quantifiable benefit received by Dan. *In re Dreier LLP*, 452 B.R. at 465-66.  Moreover, the Complaint similarly fails to allege when and how much Dan allegedly received in order to sustain a viable claim against him as an immediate or mediate beneficiary.  *Id.* at 464 (dismissing fraudulent conveyance claim where the trustee failed to adequately allege facts demonstrating that the defendant was a subsequent transferee of the transfer, holding that "[i]n order to establish an entity as a subsequent transferee, courts have required that the complaint contain the 'necessary vital statistics – the who, when, and how much' of the purported transfers…").

The DIYA Loan Payments:  The Complaint also fails to plead a cognizable cause of action against any of the Defendants to avoid the DIYA Loan Payments as constructively fraudulent transfers.  First, the PA fails to sufficiently allege that the Debtor was insolvent at the time of any of the DIYA Loan Payments.

Second, the Complaint alleges in conclusory fashion that "[u]pon information and belief,

the DIYA Trust did not provide reasonably equivalent value or fair consideration to the Debtor in exchange for the receipt of the DIYA Transfers." (Compl. ¶ 158.) However, such conclusory and unsupported allegations are insufficient to allege the Debtor's lack of reasonably equivalent value. *See, e.g.*, *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 466 (S.D.N.Y. 2018) (dismissing claim for constructively fraudulent transfer where plaintiffs simply alleged that the debtor conveyed all or virtually all of the proceeds from the sale of Notes to defendants and received nothing of reasonably equivalent value from either defendant; and that the debtor though it had no legitimate assets, received utterly worthless receivables from the Odebrecht entities in exchange for the conveyances to defendants).[8] Moreover, in making this allegation, the PA buries in a footnote the fact that the payments to DIYA were loan repayments. (Compl. ¶ 158 n.4; Deepak Decl. Ex. 1.) And, payments on account of a loan obligation are presumed to be made for value. *See In re Vivaro Corp.*, 524 B.R. at 556 ("The Note obligation is an antecedent debt, and any payments made on account of that Note obligation are payments made on account of that antecedent debt and are "presumed [to be] made 'for value.'").[9]

Third, other than DIYA, Deepak and Sheela, the Complaint does not allege that any other

---

[8] *See also In re Vivaro Corp.*, 524 B.R. 536, 556 (Bankr. S.D.N.Y. 2015) (dismissing claim for constructively fraudulent conveyance because "[w]ithout allegations regarding the value of the membership interests bought by Vivaro, it is impossible for the Court to evaluate whether the value paid or obligation incurred by Vivaro was not reasonably equivalent to those membership interests received."); *In re Garcia,* 494 B.R. 799, 815 (Bankr. E.D.N.Y. 2013) ("[A]s a threshold matter, the Complaint must be dismissed because it fails to plead any facts concerning the value of Peter's membership interests as compared to the consideration received in exchange for them. Instead, Plaintiff merely states in conclusory fashion that he did not receive reasonably equivalent value."); *In re Hydrogen, L.L.C.,* 431 B.R. 337, 353 (Bankr. S.D.N.Y. 2010) (dismissing fraudulent conveyance claim due to "a complete absence of facts supporting the allegation that the Debtor received less than reasonably equivalent value in exchange" for the transfers).

[9] In his footnote, the PA contends "upon information and belief" that there was no loan and instead, without any factual support, asserts that DIYA's loan to the Debtor was "an infusion of equity or capital." (Compl. ¶ 158 n.4.) Later in his Complaint, however, the PA does a complete 180, affirmatively asserting that the payments to DIYA were on account of an antecedent debt. (*Id.* ¶ 253.) Since payments on account of an infusion of equity or capital, by definition, are not on account of an antecedent debt, the Court should disregard the PA's speculation that DIYA did not make a loan to the Debtor. In any event, Defendants have provided a copy of the Promissory Note confirming that this was, in fact, a loan. (Deepak Decl. Ex. 1.)

Defendant was an initial, immediate or mediate transferee of the DIYA Loan Payments, or an entity for whose benefit they were made. As for Deepak and Sheela, the Complaint simply alleges in conclusory fashion that "[u]pon information and belief, [they] benefited from the DIYA Transfers and/or [were] the immediate or mediate transferees of such transfers." (Compl. ¶ 161.) Such conclusory allegation is woefully insufficient to allege either: (a) any direct, ascertainable and quantifiable benefit received by Deepak and Sheela; or (b) the when and how much either allegedly received to sustain a claim against either of them as an immediate or mediate beneficiary. *In re Dreier LLP*, 452 B.R. at 465-66.

The Salary Payments: Finally, the Complaint fails to plead a cognizable cause of action against any of the Defendants to avoid the Salary Payments as constructively fraudulent transfers. First, the PA fails to sufficiently allege that the Debtor was insolvent at the time of any of the Salary Payments. Moreover, the Complaint does not allege that such transfers were made pursuant to an employment contract that was *not in the ordinary course of business*. If anything, the PA acknowledges that these were routine payments made throughout the executives' entire tenure at the Company. (*See* Compl. ¶¶ 129, 132, 135, 141, 144, 147, 150, 153.)

Second, while the PA seeks to claw back the entirety of the salaries paid to four of the Debtor's top executives, he fails to explain in any non-conclusory way how each did not provide adequate consideration or reasonably equivalent value in exchange for their very modest salaries, particularly when their combined annual salaries totaled less than *0.4%* of the Debtor's annual sales. (*Id.* ¶¶ 29, 129, 134-35, 143-44, 149-50, 154.) This is no more clear than in the case of Melina, the Debtor's Chief Merchandising Officer, whom the PA alleges should be entitled to no salary based on vague and conclusory statements that she was not acting in the Debtor's best interests. (*Id.* ¶¶ 150-54.) Such *de minimis* allegations are utterly deficient as the basis of a

fraudulent conveyance claim to cause them to forfeit salaries earned during a time when the Debtor's sales rose from $9 million annually to $340 million.

Third, at a minimum, the PA's claims with respect to the Salary Payments must be dismissed against Sheela, Dan, DIYA, and Depina Consulting, none of whom are alleged to have benefitted from the Salary Payments or were initial, immediate or mediate transfers of those payments.

## IV. The PA's Claim To Avoid Constructively Fraudulent Transfers Under N.Y. Debtor & Creditor Law §§ 273, 274 and 275 Should Be Dismissed (Counts IV-VI)

The PA also seeks to claw back – as constructively fraudulent transfers from each of the Defendants – the Ahmed Theft, Techsys Payments, Depina Consulting Payments, DIYA Loan Payments and the Salary Payments under Sections 273-75 of New York's Debtor & Creditor Law. The only difference between these causes of action and the claim under 11 U.S.C. § 548(a)(1)(B), is that the New York statute covers transfers made within six years of each transfer – whereas § 548(a)(1)(B) is limited to two years from the Petition Date. These claims should be dismissed for the same reasons discussed in Point III, above.

## V. The PA's Claim To Avoid Actually Fraudulent Transfers Under N.Y. Debtor & Creditor Law § 276 Should Be Dismissed (Count III)

The PA further seeks to claw back all of the same transfers discussed in Points III and IV, above, as actually fraudulent transfers under § 276 of New York's Debtor & Creditor Law. Under this statute, the PA must plead with particularity under FRCP 9(b) that the transfers made within the last six years were done with the actual intent to hinder, delay or defraud the Debtor. N.Y. Debt. & Cred. Law § 276; *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (applying Rule 9(b) to New York state intentional fraudulent conveyance statute); *Guangzhou Love Live Culture Dev. Ltd. Co. v. Belinda Int'l Ltd.*, 2018 WL 1800879, at *7 (E.D.N.Y. Jan. 24, 2018); *In re Adler*, 372 B.R. 572, 581 (Bankr. E.D.N.Y. 2007) (same). This claim fares no better than the PA's claims

that these same transfers constitute constructively fraudulent transfers.

First, as noted in Point III, above, even under the more liberal pleading standard of FRCP 8(a), the Complaint fails to adequately plead that: (a) any Defendant was an initial, immediate or mediate transferee, or beneficiary of, of the Ahmed Theft or the Teschsys Payments; (b) any Defendant (other than Depina Consulting) was an initial, immediate or mediate transferee, or beneficiary of, any of the Depina Consulting Payments; (c) any Defendant (other than DIYA) was an initial, immediate or mediate transferee, or beneficiary of, any of the DIYA Loan Payments; and (d) any Defendant (other than Deepak, Melina, Vishal, and Vipesh) was an initial, immediate or mediate transferee, or beneficiary of, the Salary Payments. If the PA cannot satisfy the more liberal pleading standard under FRCP 8(a), he cannot satisfy the heightened standard of FRCP 9(b) applicable to claims for actually fraudulent conveyances.

Second, the Complaint fails to adequately plead with particularity the specifics of the Techsys Payments, the Depina Consulting Payments, the DIYA Loan Payments or the Salary Payments, as required by FRCP 9(b). "The party asserting an intentional fraudulent transfer claim must 'specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid.' Consequently, allegations that a debtor made an aggregate amount or series of cash or other transfers over a period of time, without further particularization, are insufficient to state an intentional fraudulent transfer claim." *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008) (citations omitted).[10]

---

[10] *See e.g., Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.,* 2006 WL 2802092, at *9 (E.D.N.Y. Sept. 28, 2006) (dismissing intentional fraudulent transfer claims that aggregated and lumped a series of cash transfers made over a three to five year period and failed to identify how many transfers were being challenged or the specific dates or amounts of those transfers); *Gindi v. Silvershein,* 1995 WL 347397, at *6 (S.D.N.Y. June 8, 1995) (dismissing intentional fraudulent transfer claim that alleged a series of non-specific transfers and obligations); *In re Allou Distribs., Inc.,* 379 B.R. 5, 31–32 (Bankr. E.D.N.Y.2007) (dismissing claim of intentional fraudulent transfer of "millions of dollars" without specifying the source, dates or the amounts of the transfers that the trustee was seeking to recover, noting that the trustee failed to adequately plead the "necessary vital statistics – the who, when, and how much – of the transfers 'in excess of $1,000,000' to be recovered"); *In re Adler,* 372 B.R. at 581 (dismissing intentional

Here, other than the Ahmed Theft (for which none of the Defendants had any involvement and are thus not liable), the PA simply lumps together payments over a four-year period prior to the Petition Date with no effort to particularize the timing or amount of such payments. For example, the PA alleges that from 2012 through the Petition Date in November 2016, the Debtor paid DIYA $525,000 without any breakdown of the dates or timing of the specific payments comprising this aggregate figure. (Compl. ¶ 157). The PA provides the same generalized allegations for the Techsys Payments, the Depina Consulting Payments, and the Salary Payments. (*Id.* ¶¶ 128, 132, 141, 147, 153, 175.) Indeed, with respect to the Techsys and Depina Consulting Payments, the PA alleges that the amounts in excess of the purported monthly maximums constitute fraudulent conveyances, but makes no effort to allege what these net figures are on a monthly basis or even in the aggregate.[11]

Third, other than with the possible exception of the Ahmed Theft (for which, as noted, none of the Defendants had any involvement and are thus not liable) the Complaint fails to plead, with particularity, facts demonstrating that any of those transfers were done with the actual intent to hinder, delay or defraud the Debtor. Instead, the PA simply contains a single conclusory recitation that the "Fraudulent Transfers were made with actual intent to hinder, delay or defraud creditors of the Debtor." (Compl. ¶ 206.) Such conclusory regurgitation of the legal standard is wholly inadequate to meet the heightened pleading standard under FRCP 9(b). *See, e.g.*, *Guangzhou Love Live Culture Dev. Ltd. Co.*, 2018 WL 1800879, at *7 (dismissing plaintiff's

---

fraudulent transfer claim that did not "allege any specifics as to the amounts or dates" of cash deposits made by a debtor husband into his wife's bank account).

[11] For example, the PA alleges that the maximum that could be paid to Depina Consulting was $8,000/month, and that in total from 2012 through the Petition date, the Debtor paid Depina Consulting $653,826. (Compl. ¶¶ 173-76.) From the face of the Complaint, there is no way for the Defendants to know the amount that the PA contends is improper. The PA does not state how many months are at issue, as he has not identified the start date for the payments in 2012. Additionally, the PA fails to allege whether the monthly amount was exceeded every month. Without such vital information, it is impossible for the Defendants to know the amount of the PA's proposed claim.

actual fraudulent conveyance claims that consisted of nothing more than conclusory statements); *In re Adler*, 372 B.R. at 581 (dismissing claim for actual fraudulent conveyance where the trustee made conclusory statement that the defendants acted with actual intent to hinder, delay, or defraud creditors without anything more, and failed to set forth facts supporting the existence of any badges of fraud).

## VI. The PA's Claim To Avoid Transfers Made Within 90 Days Of The Petition Date Under 11 U.S.C. § 547(b)(4)(A) Should Be Dismissed (Count VII)

Pursuant to 11 U.S.C. § 547(b)(4)(A), the PA seeks to claw back all Depina Consulting Payments and those Salary Payments made to Deepak, Vishal, and Melina within 90 days prior to the Debtor's bankruptcy filing.  (Compl. ¶ 240.)  This claim fails because § 547 provides that: "The trustee may not avoid under this section a transfer – (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was – (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms."  11 U.S.C. § 547(c)(2).

Here, the Salary Payments to Deepak, Vishal and Melina were made on ordinary business terms and in the ordinary course of the Debtor's business, as they had continuously been made over, at a minimum, the last four years of the Debtor's business, and were made on ordinary business terms.  (Compl. ¶¶ 132, 141, 153.)  *See, e.g.*, *In re Broadway Lumber Co., Inc.*, 168 B.R. 941, 950 (Bankr. W.D. Mo. 1994) (holding that salary reimbursements were not recoverable as a fraudulent conveyance under 11 U.S.C. § 547(c)(2)), *aff'd*, 118 F.3d 1246 (8th Cir. 1997). Similarly, the Depina Consulting Payments were made on ordinary business terms and in the ordinary course of the Debtor's business, as they were made pursuant to the Depina Agreement entered into in 2012 to provide a full-service customer service program for the Debtor.  (Compl. ¶

172.) Indeed, there are no allegations suggesting that any of these payments were made in a manner so as to prioritize one group of creditors over another.

Further, the PA's claim that Dan is somehow liable to return payments made to Depina Consulting because he is an initial, immediate or mediate transferee, or beneficiary of the Depina Consulting Payments fails for the reasons set forth in Point III, above.

## VII. The PA's Claim To Avoid Transfers Made Within 1 Year Of The Petition Date Under 11 U.S.C. § 547(b)(4)(B) Should Be Dismissed (Count VIII)

Pursuant to 11 U.S.C. § 547(b)(4)(B), the PA seeks to claw back all DIYA Loan Payments, Techsys Payments, and those Salary Payments made to Deepak, Vishal, Vipesh, and Melina between 90 days and one year prior to the Debtor's bankruptcy filing. (Compl. ¶ 250.) This claim fails for multiple reasons.

First, for the reasons discussed in Point III above, the PA has failed to adequately allege that the Debtor was insolvent at the time of each of the transfers identified in ¶ 250 of the Complaint as required in 11 U.S.C. § 547(b)(3).

Second, for the reasons discussed in Point VI above, all of these transfers were made on ordinary business terms and in the ordinary course of the Debtor's business.

Third, the PA's claim that Deepak and Sheela are somehow liable to return payments made to DIYA because they are initial, immediate or mediate transferees, or beneficiaries of the DIYA Payments fails for the reasons set forth in Point III, above.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court enter an order dismissing the Complaint in its entirety against each of them and granting Defendants such other and further relief as this Court deems just and proper.

Dated: March 1, 2019

Respectfully submitted:

*/s/ Steven H. Holinstat*
Steven H. Holinstat
**Proskauer Rose LLP**
Eleven Times Square
New York, NY 10036-8299
(212) 969-3000

Jeff J. Marwil (*pro hac vice pending*)
Brooke H. Blackwell (*pro hac vice pending*)
**Proskauer Rose LLP**
70 West Madison, Suite 3800
Chicago, IL 60602-4342
(312) 962-3550

Safraz W. Ishmael (*pro hac vice pending*)
Christopher J. Deck (*pro hac vice pending*)
**Proskauer Rose LLP**
One International Place
Boston, Massachusetts 02110-2600
(617) 526-9600

*Counsel for Defendants Deepak Agarwal, Melina Agarwal, Sheela Agarwal, Vipesh Agarwal, Vishal Agarwal, Daniel Depina, DIYA Irrevocable Trust, and Depina Consulting, LLC.*