Steven H. Holinstat
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036-8299
(212) 969-3000

Jeff J. Marwil (*pro hac vice* pending)
Brooke H. Blackwell (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
70 West Madison, Suite 3800
Chicago, Illinois 60602-4342
(312) 962-3550

Safraz W. Ishmael (*pro hac vice* pending)
Christopher J. Deck (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
One International Place
Boston, Massachusetts 02110-2600
(617) 526-9600

*Counsel to Defendants Deepak Agarwal, Melina Ash, Sheela Agarwal, Vipesh Agarwal, Vishal Agarwal, Daniel Depina, DYIA Irrevocable Trust, and Depina Consulting, LLC.*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br>CHOXI.COM, Inc.,<br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No.:  16-13131-SCC |
| TRACY KLESTADT, in his capacity as Plan Administrator of the estate of Choxi.com, Inc.,<br><br>　　　　　　　　Plaintiff,<br>　　　v.<br><br>DEEPAK AGARWAL, MELINA AGARWAL F/K/A MELINA ASH, SHEELA AGARWAL, VIPESH AGARWAL, VISHAL AGARWAL, IFTIKAR AHMED, DANIEL DEPINA, DYIA IRREVOCABLE TRUST, DEPINA CONSULTING, LLC, AND TECHSYS MARKETING, INC.,<br><br>　　　　　　　　Defendants. | Adv. No. 18-01794-SCC<br><br>**<u>Declaration of Deepak Agarwal</u>** |

I, **DEEPAK AGARWAL**, hereby declare, under penalty of perjury:

1.      I am a defendant in the above referenced action. I submit this declaration in support of defendants' motion to dismiss.

## Service of Process

2.      I am advised that on or about December 4, 2018, Tracy Klestadt, Plan Administrator of the bankruptcy estate of Choxi.com, Inc. (the "PA"), commenced the above-captioned adversary proceeding by filing a complaint.

3.      I am further advised that on or about December 26, 2018, the PA's counsel filed a Certificate of Service certifying that on December 13, 2018, a copy of the Summons and Complaint in the above-captioned adversary action was served on me by first class mail at 100 Barclay Street, Apt 29A, New York, NY 10007.

4.      I do not, however, reside at 100 Barclay Street, Apt 29A, New York, NY 10007. Indeed, I do not presently live in the United States.

5.      To date, the PA has not served me with a copy of the Complaint in the above-referenced adversary action at my place of abode.

## Documents Relevant to Motion to Dismiss

6.      Attached hereto as **Exhibit 1** is a true and correct copy of a Promissory Note, by the debtor, Choxi.com, in favor of the DIYA Irrevocable Trust.

7.      Attached hereto as **Exhibit 2** is a true and correct copy of the debtor's Second Amended and Restated Certificate of Incorporation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: February 27, 2019

Respectfully submitted,

Deepak Agarwal

# EXHIBIT 1

# PROMISSORY NOTE

NEITHER THIS NOTE NOR ANY SECURITIES ISSUABLE UPON THE EXCHANGE HEREOF HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"). THIS NOTE MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS A REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO THIS NOTE HAS BECOME EFFECTIVE OR UNLESS LENDER ESTABLISHES TO THE REASONABLE SATISFACTION OF MAKER THAT AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.

$1,000,000                                                      September 25 , 2015

FOR VALUE RECEIVED, Choxi.com, Inc., a Delaware corporation ("Maker"), having its principal place of business at 381 Park Ave South, 4th Floor, New York, NY 10016, hereby promises to pay to the order of Diya Irrevocable Trust or its assigns (the "Holder") the principal amount of One Million Dollars ($1,000,000) (the "Principal Amount") plus interest from and including the date hereof on the Principal Amount from time to time outstanding, at a rate per annum equal to 12.0%, compounded annually, in accordance with the terms and provisions of this Promissory Note (this "Note"). Interest shall be calculated on the basis of the actual number of days elapsed over a year of 360 days.

This Note is issued as part of a series of similar promissory notes (collectively the "Notes") issued and sold pursuant to the terms of that certain Securities Purchase Agreement (the "Agreement") dated as of the date hereof to the persons and entities listed on the Schedule of Purchasers attached to the Agreement (the "Holders"). Capitalized terms used herein without definition shall have the meanings given to such terms in the Agreement.

This Note will be registered on the books of the Company or its agent as to principal and interest.

## SECTION 1.   PAYMENTS

(a)    _Principal and Interest_.  Except as otherwise indicated in this Note, the entire outstanding Principal Amount, together with all accrued and unpaid interest thereon, will be due and payable on September 25, 2016  (the "Maturity Date").  Acrued interest shall be paid monthly, beginning on September   , 2015.

(b)    _Prepayment_.  The Principal Amount and accrued interest may be prepaid in whole or in part at any time prior to the Maturity Date, provided, however, that any such prepayment must be accompanied by all interest accrued through the payment date.

(c)    _Application of Payments_.  All payments made by Maker under this Note shall be applied first to any outstanding fees, costs, expenses and penalties, second to accrued and unpaid interest on the unpaid Principal Amount and the remainder to the Principal Amount.

(d)    _Method of Payment_.  Unless otherwise agreed by the Lender, all payments in connection with this Note will be made by wire transfer of immediately available funds to the account of Lender at or before 5:00 p.m. New York, New York time on the date due.  Any wire transfer received by the Lender after 5:00 p.m. New York, New York time shall be deemed to have been received by the Lender prior to such time on the next Business Day (as defined below).  All such payments shall be wired to an account as Lender may designate from time to time.  In the event that any scheduled payment date falls on a day other than a Business Day, the payment date shall be deemed to be the following Business

Day, and such additional days shall be deemed to have elapsed for purposes of computing interest payable on such payment date. For purposes hereof, the term "Business Day" shall mean any day other than a Saturday, Sunday or any day upon which banking institutions are authorized or required by law or executive order to be closed in the City of New York, New York.

## SECTION 2.   OTHER PAYMENT TERMS

(a)     <u>Acceleration</u>.  Upon and after the occurrence of an Event of Default (as defined below), Lender shall have the right without presentment, notice or demand of any kind, to accelerate this Note and to declare all of the obligations of Maker under this Note immediately due and payable.

(b)     <u>Triggering Event</u>.  Upon the occurrence of a Triggering Event, the outstanding Principal Amount shall become due and payable immediately following the occurrence of the Triggering Event, together with all interest accrued as of the payment date, provided that this provision shall not be deemed in any circumstances to extend payment in full beyond the Maturity Date. As used herein, "Triggering Event" means any of the following: (i) the sale of greater than 50% of the outstanding shares of the Maker's common stock; (ii) the sale of substantially all of the assets of the Maker; or (iii) the Company's closing on a Series C round of financing of at least $10,000,000.00.  Maker shall give notice of a proposed Triggering Event to Lender as soon as practicable prior to the closing thereof, but in no event less than ten (10) calendar days prior to such event.  Such notice shall specify the date of the closing and the nature of the Triggering Event.

(c)     <u>Additional Expense</u>.  If this Note or any Principal Amount or interest thereon is not paid when due, whether by reason of acceleration or otherwise, and this Note is placed in the hands of any attorney or attorneys for collection, Maker promises to pay, in addition to the other amounts due hereon, the reasonable costs and expenses of such collection, including reasonable attorneys' fees and expenses.  In addition, if this Note or any Principal Amount or interest thereon is not paid when due and the Company is in default beyond any applicable notice and cure period, interest shall be due on the Principal Amount, from the Maturity Date, at the rate of twenty percent (20%) per annum ("Default Interest"), calculated on the basis of the actual number of days elapsed over a year of 360 days.

(d)     <u>Future Offerings</u>.  Should, after the closing of this Note but prior to the Maturity Date, the Board of Directors and/or shareholders of Maker, as such approval may be required, approve a bridge loan to Maker's offering and sale of, or Maker's actual offering and sale of, a Series C Preferred Stock offering, then Lender may, upon terms and conditions acceptable to the Lender, and subject to Maker's compliance with its obligations to its shareholders, if any, which may include, but are not limited to, preemptive rights, exchange the then outstanding Principal Amount and accrued interest owed under this Note in whole or in part with an amount of bridge loan debt or Series C Preferred Stock at the same price per share of Series C Preferred Stock (and accompanying securities in the case of units) as the other purchasers of the Series C Preferred Stock pay in the Series C Preferred Stock (or units, as the case may be) offering.

This Note is secured by the Guaranty, as more fully described in the Agreement.

## SECTION 3.   EVENT OF DEFAULT.

As used herein, "Event of Default" means any one or more of the following events, conditions or acts: (i) Maker fails to make any payment of accrued interest or the Principal Amount when due; (ii) the execution of an assignment for the benefit of creditors by Maker or the filing or commencement for any proceedings for relief under the United States Bankruptcy Code (11 U.S.C. Section 101 et seq.), as it may be amended from time to time, or insolvency laws or any laws

relating to the relief of debtors, readjustment of any indebtedness, reorganization, composition, extension of debt, or the appointment of a trustee for, by or against Maker; (iii) a breach by Maker of any of its covenants, representations or warranties contained in this Note that is not cured, in the reasonable discretion of the Lender, within 10 days (or for payment due at the Maturity Date, within 30 days), whether or not Maker has received notification from Lender of such breach, or (iv) the Guaranty shall fail to remain in full force or effect or any action shall be taken to discontinue or to assert the invalidity or unenforceability of such Guaranty, or the Guarantor shall fail to comply with any of the terms or provisions of the Guaranty or shall deny that he has any further liability under the Guaranty or shall give notice to such effect.

**SECTION 4.   MISCELLANEOUS**

(a)     <u>Waivers</u>.  Maker hereby waives presentment, demand for payment, notice of non-payment, protests, notice of protests, notice of dishonor and all other notices in connection with this Note. No waiver by Lender shall be deemed to have been made unless such waiver is in writing and signed by Lender.  Lender reserves the right to waive or refrain from waiving any right or remedy under this Note. No delay or omission on the part of Lender in exercising any right or remedy under this Note shall operate as a waiver of such right or remedy or of any other right or remedy under this Note.  A waiver on any one occasion shall not be construed as a bar to or waiver of any such right or remedy on any future occasion.

(b)     <u>Amendments</u>.  No amendment or waiver of any provision of this Note, nor consent to any departure by Maker herefrom, shall in any event be effective unless the same shall be in writing and signed by Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(c)     <u>Severability</u>.  If any term, covenant or provision contained in this Note, or the application thereof to any person, entity or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; but, the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other persons, entities or circumstances shall not be affected, impaired or restricted thereby.

(d)     <u>Captions</u>.  The captions or headings at the beginning of any Section or portion of any Section in this Note are for the convenience of Maker and Lender and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

(e)     <u>Usury Savings Clause</u>.  It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect.  Accordingly, notwithstanding any provision to the contrary in this Note or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate.  If under any circumstance whatsoever, Lender will ever receive anything of value as interest or deemed interest by applicable law under this Note or any other document pertaining hereto or otherwise an amount that would exceed the highest lawful rate, such amount that would exceed the highest lawful rate shall be applied first to the reduction of the principal amount owing under this Note or on account of any other indebtedness of Maker to Lender, and not to the payment of interest, second, to the payment of any other amounts due from Maker to Lender and third, if no other obligations are owing to Lender, then, such excess shall be refunded to Maker.  In determining whether or not the interest paid or payable with respect to any indebtedness of Maker to Lender, under any specified contingency, exceeds the highest

lawful rate, Maker and Lender will, to the maximum extent permitted by applicable law, (i) characterize any non-principal payment as an expense, fee or premium rather than as interest, (ii) exclude voluntary prepayments and the effects thereof, (iii) amortize, prorate, allocate and spread the total amount of interest throughout the full term of such indebtedness (including any extension or renewal) so that interest thereon does not exceed the maximum amount permitted by applicable law, and/or (iv) allocate interest between portions of such indebtedness, to the end that no such portion shall bear interest at a rate greater than that permitted by applicable law. Lender expressly disavows any intention to charge or collect excessive unearned interest or finance charges in the event that the maturity of this Note is accelerated. The Maker agrees that if such excess payments are applied in the manner provided for in this Section, then to the fullest extent permitted by applicable law, Lender shall not be subject to any penalty provided for by any applicable law pertaining to charging or collecting interest in excess of that permitted applicable law.

(f)     Assignment.  The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns, heirs and personal representatives, of the parties.  Maker's obligations under this Note may not be assigned without Lender's prior written consent.

(g)     Governing Law.  This Note shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of laws principles.

(h)     Notices.  All notices and other communications given or made pursuant to this Note shall be in writing and shall be deemed effectively given:  (i) upon personal delivery to the party to be notified, (ii) when sent by confirmed facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next business day, (iii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (iv) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.  All communications shall be sent to the respective parties at their address as set forth on the signature page, or to such facsimile number or address as subsequently modified by written notice given in accordance with this Section 4(h).

(i)     Parity with Other Notes.  The Company's repayment obligation to the Holder under this Note shall be on parity with the Company's obligation to repay all Notes issued pursuant to the Agreement.  In the event that the Company is obligated to repay the Notes and does not have sufficient funds to repay all the Notes in full, payment shall be made to the Holders of the Notes on a *pro rata* basis. The preceding sentence shall not, however, relieve the Company of its obligations to the holder hereof.

**SECTION 5.     WAIVER OF JURY TRIAL AND CONSENT TO JURISDICTION**

(a)     Waiver of Jury Trial.  MAKER IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS NOTE OR THE ACTIONS OF LENDER IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF (COLLECTIVELY, "LITIGATION").  NEITHER THE LENDER NOR THE MAKER SHALL SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY LITIGATION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER LITIGATION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  THESE PROVISIONS SHALL NOT BE DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY EITHER THE LENDER OR THE MAKER EXCEPT BY WRITTEN INSTRUMENT EXECUTED BY THEM.

(b)     Consent to Jurisdiction.  The Lender and Maker, each after having consulted or having had the opportunity to consult with legal counsel, hereby knowingly, voluntarily, intentionally,

and irrevocably: (i) consents to the jurisdiction of the state and federal courts in New York County with respect to any Litigation; (ii) waives any objections to the venue of any Litigation in either such court; (iii) agrees not to seek to remove, by consolidation or otherwise, any Litigation commenced in either of such courts to any other court; and (iv) waives personal service of process in connection with any Litigation and consents to service of process by registered or certified mail, postage prepaid, addressed as provided herein. These provisions shall not be deemed to have been modified in any respect or relinquished by either the Lender or the Maker except by written instrument executed by each of them.

[Signature Page Follows Immediately]

IN WITNESS WHEREOF, the Maker and the Lender have each caused this Note to be executed and delivered by a duly authorized officer as of the date first above written.

CHOXI.COM, Inc.,
a Delaware corporation

By: 

Date of Execution: September 25, 2015

Address for Notice:

381 Park Ave South, 4th Floor New York, NY 10016
Attention: Deepak Agarwal, CEO

# EXHIBIT 2



*The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE RESTATED CERTIFICATE OF "NOMORERACK.COM, INC.",
FILED IN THIS OFFICE ON THE EIGHTEENTH DAY OF OCTOBER, A.D.
2013, AT 2:20 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE
NEW CASTLE COUNTY RECORDER OF DEEDS.

5143931  8100

131212571

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

*AUTHENTICATION: 0826068*

*DATE: 10-18-13*

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 02:23 PM 10/18/2013*
*FILED 02:20 PM 10/18/2013*
*SRV 131212571 – 5143931 FILE*

### SECOND AMENDED AND RESTATED

### CERTIFICATE OF INCORPORATION
### OF
### NOMORERACK.COM, INC.

### (Pursuant to Sections 242 and 245 of the
### General Corporation Law of the State of Delaware)

**Nomorerack.com, Inc**. (the "**Corporation**"), a corporation organized and existing under and by virtue of the provisions of the General Corporation Law of the State of Delaware (the "**General Corporation Law**"),

### DOES HEREBY CERTIFY:

1.      That the name of the Corporation is Nomorerack.com, Inc., and that the Corporation was originally incorporated pursuant to the General Corporation Law on April 23, 2012. The Certificate of Incorporation of the Corporation was amended and restated in its entirety on November 13, 2012 by the filing of an Amended and Restated Certificate of Incorporation. The Amended and Restated Certificate of Incorporation was amended by the filing of a Certificate of Amendment to the Amended and Restated Certificate of Incorporation on November 26, 2012.

2.      That the Board of Directors duly adopted resolutions proposing to amend and restate the Amended and Restated Certificate of Incorporation of the Corporation, as amended, declaring said amendment and restatement to be advisable and in the best interests of the Corporation and its stockholders, and authorizing the appropriate officers of the Corporation to solicit the consent of the stockholders therefor, which resolution setting forth the proposed restatement amendment and restatement is as follows:

**RESOLVED**, that the Amended and Restated Certificate of Incorporation of the Corporation, as amended, be amended and restated in its entirety as follows:

**FIRST:**      The name of this corporation is Nomorerack.com, Inc. (the "**Corporation**").

**SECOND:**      The address of the registered office of the Corporation in the State of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington, County of New Castle, State of Delaware 19808. The name of the Corporation's registered agent is the Corporation Service Company.

**THIRD:**      The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law.

**FOURTH:**      The total number of shares of all classes of capital stock which the Corporation shall have authority to issue is 123,131,373 shares of stock, consisting of (i) 100,000,000 shares of common stock, $0.0001 par value per share ("**Common Stock**"), and (ii) 23,131,373 shares of preferred stock, $0.0001 par value per share ("**Preferred Stock**").

The following is a statement of the designations and the powers, privileges and rights, and the qualifications, limitations or restrictions thereof in respect of each class of capital stock of the Corporation.

## A. COMMON STOCK

1. General. The voting, dividend and liquidation rights of the holders of the Common Stock are subject to and qualified by the rights, powers and preferences of the holders of the Preferred Stock set forth herein.

2. Voting. Except as required by applicable law, the holders of Common Stock shall be entitled to vote on each matter on which the stockholders of the Corporation shall be entitled generally to vote, and each holder of Common Stock shall be entitled to one vote for each share of Common Stock held by such holder. The number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by (in addition to any vote of the holders of one or more series of Preferred Stock that may be required by the terms of this Second Amended and Restated Certificate of Incorporation) the affirmative vote of the holders of shares of capital stock of the Corporation representing a majority of the votes represented by all outstanding shares of capital stock of the Corporation entitled to vote, irrespective of the provisions of Section 242(b)(2) of the General Corporation Law and without a separate class vote of the holders of Common Stock.

## B. PREFERRED STOCK

Thirteen Million Six Hundred Sixteen Thousand Sixty-Three (13,616,063) shares of Preferred Stock of the Corporation are hereby designated as "**Series A Preferred Stock**" (the "**Series A Preferred Stock**") and Nine Million Five Hundred Fifteen Thousand Three Hundred Ten (9,515,310) shares of Preferred Stock of the Corporation are hereby designated as "**Series B Preferred Stock**" (the "**Series B Preferred Stock**"). The Series A Preferred Stock and the Series B Preferred Stock shall have the rights, preferences, powers, privileges, restrictions, qualifications and limitations set forth in this Part B of this Article FOURTH. Unless otherwise indicated, references to "Sections" or "Subsections" in this Part B of this Article FOURTH refer to sections and subsections of Part B of this Article FOURTH.

1. Dividends.

1.1 From and after the date of the issuance of any shares of Series B Preferred Stock, dividends at the rate per annum of six percent (6%) of the "Series B Original Issue Price" (as defined below) shall accrue on such shares of Series B Preferred Stock (the "**Series B Accruing Dividends**"). The holders of Series B Preferred Stock shall be entitled to receive the Series B Accruing Dividends out of any funds legally available therefor prior and in preference to any declaration or payment of any dividends on shares of any other class or series of capital stock of the Corporation (other than dividends on shares of Common Stock payable in shares of Common Stock). The Series B Accruing Dividends shall be cumulative and shall accrue on each such share of Series B Preferred Stock from the respective issue date of such share based on a three hundred sixty-five (365) day year, whether or not earned or declared; provided however, that such Series B Accruing Dividends shall be payable only as provided in Subsection 2.1 or in Subsection 5.1 below, and the Corporation shall be under no other obligation to pay such Series B Accruing Dividends. The Corporation shall not declare, pay or set aside any dividends on

shares of any other class or series of capital stock of the Corporation (other than dividends on shares of Common Stock payable in shares of Common Stock) unless (in addition to the obtaining of any consents required elsewhere in the Certificate of Incorporation) the holders of the Series B Preferred Stock then outstanding shall first receive, or simultaneously receive, a dividend on each outstanding share of Series B Preferred Stock in an amount at least equal to (i) in the case of a dividend on Common Stock or any class or series that is convertible into Common Stock, that dividend per share of Series B Preferred Stock as would equal the product of (A) the dividend payable on each share of such class or series determined, if applicable, as if all shares of such class or series had been converted into Common Stock and (B) the number of shares of Common Stock issuable upon conversion of a share of Series B Preferred Stock, in each case calculated on the record date for determination of holders entitled to receive such dividend, or (ii) in the case of a dividend on any class or series that is not convertible into Common Stock, at a rate per share of Series B Preferred Stock determined by (A) dividing the amount of the dividend payable on each share of such class or series of capital stock by the original issuance price of such class or series of capital stock (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization with respect to such class or series) and (B) multiplying such fraction by an amount equal to the Series B Original Issue Price (as defined below); provided that, if the Corporation declares, pays or sets aside, on the same date, a dividend on shares of more than one class or series of capital stock of the Corporation, the dividend payable to the holders of Series B Preferred Stock pursuant to this Section 1 shall be calculated based upon the dividend on the class or series of capital stock that would result in the highest Series B Preferred Stock dividend. The "**Series B Original Issue Price**" shall mean \$4.466486 per share, subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization with respect to the Series B Preferred Stock. The holders of the outstanding Series B Preferred Stock may waive any dividend preference that such holders shall be entitled to receive upon the affirmative vote or written consent of the holders of at a majority of the shares of Series B Preferred Stock then outstanding (voting as a separate class) (the "**Required Series B Holders**").

1.2     From and after the date of the issuance of any shares of Series A Preferred Stock, dividends at the rate per annum of six percent (6%) of the "Series A Original Issue Price" (as defined below) shall accrue on such shares of Series A Preferred Stock (the "**Series A Accruing Dividends**"). Upon payment in full of the dividends contemplated by Section 1.1 (including, without limitation, the Series B Accruing Dividends), the holders of Series A Preferred Stock shall be entitled to receive the Series A Accruing Dividends out of any funds legally available therefor prior and in preference to any declaration or payment of any dividends on shares of any other class or series of capital stock of the Corporation (other than dividends on shares of Common Stock payable in shares of Common Stock). The Series A Accruing Dividends (collectively with the Series B Accruing Dividends, the "**Accruing Dividends**") shall be cumulative and shall accrue on each such share of Series A Preferred Stock from the respective original issue date of such share based on a three hundred sixty-five (365) day year, whether or not earned or declared; provided however, that such Series A Accruing Dividends shall be payable only as provided in Subsection 2.2 below, and the Corporation shall be under no other obligation to pay such Series A Accruing Dividends. The Corporation shall not declare, pay or set aside any dividends on shares of any other class or series of capital stock of the Corporation (other than (i) dividends on the Series B Preferred Stock and (ii) dividends on shares of Common Stock payable in shares of Common Stock) unless (in addition to the obtaining of any consents required elsewhere in the Certificate of Incorporation) the holders of the Series A

3

Preferred Stock then outstanding shall first receive, or simultaneously receive, a dividend on each outstanding share of Series A Preferred Stock in an amount at least equal to (i) in the case of a dividend on Common Stock or any class or series that is convertible into Common Stock, that dividend per share of Series A Preferred Stock as would equal the product of (A) the dividend payable on each share of such class or series determined, if applicable, as if all shares of such class or series had been converted into Common Stock and (B) the number of shares of Common Stock issuable upon conversion of a share of Series A Preferred Stock, in each case calculated on the record date for determination of holders entitled to receive such dividend, or (ii) in the case of a dividend on any class or series that is not convertible into Common Stock, at a rate per share of Series A Preferred Stock determined by (A) dividing the amount of the dividend payable on each share of such class or series of capital stock by the original issuance price of such class or series of capital stock (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization with respect to such class or series) and (B) multiplying such fraction by an amount equal to the Series A Original Issue Price (as defined below); provided that, if the Corporation declares, pays or sets aside, on the same date, a dividend on shares of more than one class or series of capital stock of the Corporation, the dividend payable to the holders of Series A Preferred Stock pursuant to this Section 1 shall be calculated based upon the dividend on the class or series of capital stock that would result in the highest Series A Preferred Stock dividend. The "**Series A Original Issue Price**" shall mean $0.881312 per share, subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization with respect to the Series A Preferred Stock. The Series B Original Issue Price and the Series A Original Issue Price may be referred to collectively herein as the "**Original Issue Price**," as the context requires. The holders of the outstanding Series A Preferred Stock may waive any dividend preference that such holders shall be entitled to receive upon the affirmative vote or written consent of the holders of a majority of the shares of Series A Preferred Stock then outstanding (voting as a separate class) (the "**Required Series A Holders**").

2. Liquidation, Dissolution or Winding Up; Certain Mergers, Consolidations and Asset Sales.

2.1 Preferential Payments to Holders of Series B Preferred Stock. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, or a Deemed Liquidation Event (as defined below), the holders of shares of Series B Preferred Stock then outstanding, shall be entitled to be paid out of the assets of the Corporation legally available for distribution to its stockholders, before any payment shall be made to the holders of Common Stock or any other securities having rights junior to the Series B Preferred Stock by reason of their ownership thereof, including the Series A Preferred Stock, an amount per share equal to the Series B Original Issue Price, plus any accrued but unpaid Series B Accruing Dividends (the amount payable pursuant to this sentence being hereinafter referred to as the "**Series B Preference**"). If, upon any such liquidation, dissolution, winding up or Deemed Liquidation Event of the Corporation, the assets of the Corporation available for distribution to its stockholders shall be insufficient to pay the holders of shares of Series B Preferred Stock the Series B Preference to which they shall be entitled under this Subsection 2.1, the holders of shares of Series B Preferred Stock shall share ratably in any distribution of the assets legally available for distribution in proportion to the respective amounts which would otherwise be payable in respect of the shares held by them upon such distribution if all amounts payable on or with respect to such shares were paid in full.

4

2.2      Preferential Payments to Holders of Series A Preferred Stock. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, or a Deemed Liquidation Event, after the payment of the Series B Preference in full but before any payment shall be made to the holders of Common Stock or any other securities having rights junior to the Series A Preferred Stock by reason of their ownership thereof, the holders of shares of Series A Preferred Stock then outstanding shall be entitled to be paid out of the assets of the Corporation legally available for distribution to its stockholders, an amount per share equal to the greater of (a) the Series A Original Issue Price, plus any accrued but unpaid Series A Accruing Dividends, or (b) such amount per share as would have been payable had all shares of Series A Preferred Stock been converted into Common Stock pursuant to Section 4 immediately prior to such liquidation, dissolution, winding up or Deemed Liquidation Event (the amount payable pursuant to this sentence being hereinafter referred to as the "**Series A Preferred Liquidation Amount**"). If, upon any such liquidation, dissolution, winding up or Deemed Liquidation Event of the Corporation, the assets of the Corporation available for distribution to its stockholders shall be insufficient to pay the holders of shares of Series A Preferred Stock the full Series A Preferred Liquidation Amount to which they shall be entitled under this Subsection 2.2, the holders of shares of Series A Preferred Stock shall share ratably in any distribution of the assets available for distribution in proportion to the respective amounts which would otherwise be payable in respect of the shares held by them upon such distribution if all amounts payable on or with respect to such shares were paid in full.

2.3      Distribution of Remaining Assets. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, or a Deemed Liquidation Event, after the payment of all preferential amounts required to be paid to the holders of shares of Preferred Stock, the remaining assets of the Corporation available for distribution to its stockholders shall be distributed among the holders of the shares of Series B Preferred Stock and Common Stock, pro rata based on the number of shares of Common Stock held by each such holder, treating for this purpose all such shares of Series B Preferred Stock as if they had been converted to Common Stock pursuant to the terms of Section 4 immediately prior to such dissolution, liquidation or winding up of the Corporation or Deemed Liquidation Event. The aggregate amount which a holder of a share of Series B Preferred Stock is entitled to receive under Subsections 2.1 and 2.3 is hereinafter referred to as the "**Series B Liquidation Amount**." The Series B Liquidation Amount and the Series A Liquidation Amount may be referred to collectively herein as the "**Preferred Liquidation Amount**," as the context requires.

2.4      Deemed Liquidation Events.

2.4.1      Definition. Each of the following events shall be considered a "**Deemed Liquidation Event**" unless the Required Series B Holders elect otherwise by written notice sent to the Corporation at least two (2) business days prior to the effective date of any such event:

        (a)      a merger or consolidation in which:

            (i)      the Corporation is a constituent party; or

            (ii)      a subsidiary of the Corporation is a constituent party and the Corporation issues shares of its capital stock pursuant to such

merger or consolidation,

except any such merger or consolidation involving the Corporation or a subsidiary in which the holders of capital stock of the Corporation immediately prior to such merger or consolidation continue to hold immediately following such merger or consolidation at least a majority, by voting power, of the capital stock of (1) the surviving or resulting entity or (2) if the surviving or resulting entity is a wholly owned subsidiary of another entity immediately following such merger or consolidation, the parent entity of such surviving or resulting entity (provided, that, for the purpose of this Subsection 2.4.1, all shares of Common Stock issuable upon exercise of Options (as defined below) outstanding immediately prior to such merger or consolidation or upon conversion of Convertible Securities (as defined below) outstanding immediately prior to such merger or consolidation shall be deemed to be outstanding immediately prior to such merger or consolidation and, if applicable, converted or exchanged in such merger or consolidation on the same terms as the actual outstanding shares of Common Stock are converted or exchanged); or

(b)     the sale, lease, transfer, exclusive license or other disposition, in a single transaction or series of related transactions, by the Corporation or any subsidiary of the Corporation of all or substantially all the assets of the Corporation and its subsidiaries taken as a whole, or the sale or disposition (whether by merger or otherwise) of one or more subsidiaries of the Corporation if substantially all of the assets of the Corporation and its subsidiaries taken as a whole are held by such subsidiary or subsidiaries, except where such sale, lease, transfer, exclusive license or other disposition is to a wholly owned subsidiary of the Corporation.

### 2.4.2     Effecting a Deemed Liquidation Event.

(a)     The Corporation shall not have the power to effect a Deemed Liquidation Event referred to in Subsection 2.4.1(a)(i) unless the definitive agreement or plan of merger or consolidation for such transaction (the "**Merger Agreement**") provides that the consideration payable to the stockholders of the Corporation shall be allocated among the holders of capital stock of the Corporation in accordance with Subsections 2.1, 2.2 and 2.3.

(b)     In the event of a Deemed Liquidation Event referred to in Subsection 2.4.1(a)(ii) or 2.4.1(b), if the Corporation does not effect a dissolution of the Corporation under the General Corporation Law within 90 days after such Deemed Liquidation Event, then (i) the Corporation shall send a written notice to each holder of Preferred Stock no later than the 90th day after the Deemed Liquidation Event advising such holders of their right (and the requirements to be met to secure such right) pursuant to the terms of the following clause (ii) to require the redemption of such shares of Preferred Stock, and (ii) if the Required Series B Holders so request in a written instrument delivered to the Corporation not later than 120 days after such Deemed Liquidation Event, the Corporation shall use the consideration received by the Corporation for such Deemed Liquidation Event (net of any retained liabilities associated with the assets sold or technology licensed, as determined in good faith by the Board of Directors of the Corporation), together with any other assets of the Corporation available for distribution to its stockholders (the "**Available Proceeds**"), to the extent legally available therefor, on the 150th day after such Deemed Liquidation Event, to redeem all outstanding shares of Preferred Stock at a price per share equal to the applicable Preferred Liquidation Amount, taking into account the preferences set forth therein. Notwithstanding the foregoing, in the event

of a redemption pursuant to the preceding sentence, if the Available Proceeds are not sufficient to redeem all outstanding shares of Preferred Stock, those funds that are legally available will be used to redeem the maximum possible number of shares of Preferred Stock in accordance with, and not by way of limitation, the preference, seniority and distribution terms and conditions of this Section 2 as if such redemption were a Deemed Liquidation Event pursuant to Subsection 2.4.1. The shares of Preferred Stock not redeemed shall remain outstanding and entitled to all the rights and preferences provided herein. At any time thereafter when additional funds of the Corporation are legally available for the redemption of shares of Preferred Stock, such funds will immediately be used to redeem the balance of the shares the Corporation has become obligated to redeem pursuant to this Subsection 2.4.2(b) but that it has not redeemed. Prior to the distribution or redemption provided for in this Subsection 2.4.2(b), the Corporation shall not expend or dissipate the consideration received for such Deemed Liquidation Event, except to discharge expenses incurred in connection with such Deemed Liquidation Event or in the ordinary course of business, as approved by the Board of Directors of the Corporation.

2.5     Amount Deemed Paid or Distributed.    In any Deemed Liquidation Event, if Available Proceeds are in a form of property other than cash, the value of such property will be deemed the fair market value of such property. The determination of fair market value of such property shall be made by the Board of Directors, provided that to the extent such property shall consist of securities, the fair market value of such securities shall be determined as follows:

2.5.1   Securities not subject to investment letter or other similar restrictions on free marketability covered by Subsection 2.5.2 below:

(a)     If traded on a securities exchange, national securities exchange or the Nasdaq Stock Market (or a similar national quotation system), the value shall be deemed to be the average of the closing prices of the securities on such exchange or system over the twenty (20) trading-day period ending three (3) trading days prior to the closing of the Deemed Liquidation Event;

(b)     If actively traded over-the-counter, the value shall be deemed to be the average of the closing bid or sale prices (whichever is applicable) over the twenty (20) trading-day period ending three (3) trading days prior to the closing of the Deemed Liquidation Event; and

(c)     If there is no active public market, the value shall be the fair market value thereof, as determined in good faith by the Board of Directors.

For the purposes of this Subsection 2.5.1, "**trading day**" shall mean any day which the exchange or system on which the securities to be distributed are traded is open and "**closing prices**" or "**closing bid prices**" shall be deemed to be: (i) for securities traded primarily on the New York Stock Exchange or Nasdaq, the last reported trade price or sale price, as the case may be, at 4:00 p.m., New York time, on that day and (ii) for securities listed or traded on other exchanges, markets and systems, the market price as of the end of the regular hours trading period that is generally accepted as such for such exchange, market or system. If, after the date hereof, the benchmark times generally accepted in the securities industry for determining the market price of a stock as of a given trading day shall change from those set forth above, the fair market value shall be determined as of such other generally accepted benchmark times.

2.5.2    The method of valuation of securities subject to investment letter or other restrictions on free marketability (other than restrictions arising solely by virtue of a stockholder's status as an affiliate or former affiliate) shall take into account an appropriate discount from the market value determined as above in Subsection 2.5.1(a), (b) or (c) to reflect the approximate fair market value thereof, as determined in good faith by the Board of Directors.

2.5.3    The foregoing methods for valuing non-cash consideration to be distributed in connection with a Deemed Liquidation Event shall be superseded by any determination of such value set forth in the definitive agreements governing such Deemed Liquidation Event.

2.5.4    Allocation of Escrow and Contingent Consideration. In the event of a Deemed Liquidation Event, if any portion of the consideration payable to the stockholders of the Corporation is placed into escrow and/or is payable to the stockholders of the Corporation only upon satisfaction of contingencies (the "**Additional Consideration**"), the Merger Agreement shall provide that (a) the portion of such consideration that is not Additional Consideration (such portion, the "**Initial Consideration**") shall be allocated among the holders of capital stock of the Corporation in accordance with Subsections 2.1, 2.2, and 2.3 as if the Initial Consideration were the only consideration payable in connection with such Deemed Liquidation Event, and (b) any Additional Consideration which becomes payable to the stockholders of the Corporation upon release from escrow or satisfaction of contingencies shall be allocated among the holders of capital stock of the Corporation in accordance with Subsections 2.1, 2.2, and 2.3 after taking into account the previous payment of the Initial Consideration as part of the same transaction, unless the Required Series B Holders elect otherwise in advance in writing.

3.    Voting.

3.1    General.    On any matter presented to the stockholders of the Corporation for their action or consideration at any meeting of the stockholders of the Corporation (or by written consent in lieu of a meeting), the holder of each share of Preferred Stock shall have the right to one vote for each share of Common Stock into which such Preferred Stock could then be converted (as of the record date for determining stockholders entitled to vote on such matter) and, with respect to such vote, such holder shall have full voting rights and powers equal to the voting rights and powers of the holders of Common Stock, and shall be entitled, notwithstanding any provision hereof, to notice of any stockholders' meeting in accordance with the Bylaws of the Corporation. The holders of Preferred Stock shall be entitled to vote together with holders of Common Stock with respect to any question upon which holders of Common Stock have the right to vote. Fractional votes shall not, however, be permitted and any fractional voting rights available on an as-converted basis (after aggregating all shares into which shares of Preferred Stock held by each holder could be converted) shall be rounded to the nearest whole number (with one-half being rounded upward).

3.2    Voting for the Election of Directors; Director Voting. At any time when at least 1,903,062 shares of Series B Preferred Stock (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization) remain outstanding, the holders of shares of Series B Preferred Stock, voting exclusively as a separate class, shall be entitled to elect two (2) directors of the Corporation (the "**Series B Directors**"). At

8

any time when at least 2,836,680 shares of Series A Preferred Stock (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization) remain outstanding, the holders of shares of Series A Preferred Stock, voting exclusively as a separate class, shall be entitled to elect one (1) director of the Corporation (the "**Series A Director**"; and together with the Series B Directors, the "**Preferred Directors**"). The holders of record of the shares of Common Stock, voting exclusively as a separate class, shall be entitled to elect four (4) directors of the Corporation (each a "**Common Director**"). The holders of record of the shares of Preferred Stock and Common Stock, voting together as a single class on an as-converted to Common Stock basis, shall be entitled to elect any remaining directors of the Corporation (each, a "**Remaining Director**"). Each director shall be entitled to one (1) vote at each meeting of directors of the Corporation or in respect of each action taken by written consent of directors. At any meeting held for the purpose of electing a director, the presence in person or by proxy of the holders of a majority of the outstanding shares of the class or series of stock entitled to elect such director shall constitute a quorum for the purpose of electing such director and the candidate or candidates to be elected by such class or series of stock shall be those who receive the highest number of affirmative votes (on an as-converted basis) of the outstanding shares of such class or series of stock. If the holders of shares of Series B Preferred Stock, Series A Preferred Stock or Common Stock, as the case may be, fail to elect a sufficient amount of directors to fill all directorships for which they are entitled to elect directors, voting exclusively and as a separate class, pursuant to the first, second or third sentence, as the case may be, of this Subsection 3.2, then any directorship(s) not so filled shall remain vacant until such time as the holders of the Series B Preferred Stock, Series A Preferred Stock or Common Stock, as the case may be, elect a person to fill such directorship by vote or written consent in lieu of a meeting; and no such directorship(s) may be filled by stockholders of the Corporation other than by the stockholders of the Corporation that are entitled to elect persons to fill such directorship, voting exclusively and as a separate class. The holders of record of the shares of Common Stock and of any other class or series of voting stock (including the Series B Preferred Stock and Series A Preferred Stock), exclusively and voting together as a single class and on an as-converted basis, shall be entitled to elect the balance of the total number of directors of the Corporation. Except as otherwise provided in this Subsection 3.2, a vacancy in any directorship to be elected by the holders of any class or series shall be filled only by vote or written consent in lieu of a meeting of the holders of such class or series or by any remaining director or directors elected by the holders of such class or series pursuant to this Subsection 3.2. In the case of an action taken by written consent without a meeting, the candidate or candidates to be elected by such class or series of stock shall be those who are elected by the written consent of the holders of a majority of such class or series of stock.

### 3.3 Protective Provisions.

3.3.1 Series B Preferred Stock Class Protective Provisions. At any time when at least 1,903,062 shares of Series B Preferred Stock (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization) are outstanding, the Corporation shall not (and shall cause any subsidiaries of the Corporation not to), either directly or indirectly by amendment, merger, consolidation or otherwise, do any of the following without (in addition to any other vote required by law or this Second Amended and Restated Certificate of Incorporation) the written consent or affirmative vote of the Required Series B Holders, given in writing or by vote at a meeting, consenting or

voting (as the case may be) separately as a class, and any such act or transaction entered into without such consent or vote shall be null and void *ab initio*, and of no force and effect:

(a) amend, alter or change any provision of this Second Amended and Restated Certificate of Incorporation or the bylaws of the Corporation, as then in effect, in a way that adversely affects the Series B Preferred Stock, including without limitation by amending this Subsection 3.3.1;

(b) increase or decrease (other than by conversion) the total number of authorized shares of Preferred Stock, Common Stock or any series thereof;

(c) create, or authorize the creation of, or issue or obligate itself or any subsidiary, to issue any securities (whether equity, convertible debt or a unit of debt and equity securities or any other security convertible into or exercisable for any such security) having any rights, preferences, powers or privileges senior to or on parity with the rights, preferences, powers and privileges of the Series B Preferred Stock;

(d) effect, or obligate the Corporation or any subsidiary to effect, a liquidation, dissolution or winding up of the Corporation or a Deemed Liquidation Event unless the holders of Series B Preferred Stock will receive proceeds per share of Series B Preferred Stock at the closing in cash or marketable securities equal to at least four times (4x) the Series B Original Issue Price (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization);

(e) reclassify, alter or amend (i) any existing security of the Corporation that is pari passu with the Series B Preferred Stock in respect of the distribution of assets on the liquidation, dissolution or winding up of the Corporation, the payment of dividends or rights of redemption, if such reclassification, alteration or amendment would render such other security senior to the Series B Preferred Stock in respect of any such right, preference or privilege, or (ii) any existing security of the Corporation that is junior to the Series B Preferred Stock in respect of the distribution of assets on the liquidation, dissolution or winding up of the Corporation, the payment of dividends or rights of redemption, if such reclassification, alteration or amendment would render such other security senior to or pari passu with the Series B Preferred Stock in respect of any such right, preference or privilege;

(f) purchase or redeem (or permit any subsidiary to purchase or redeem) or pay or declare any dividend or make any distribution on, any shares of capital stock of the Corporation other than (i) redemptions or repurchases pursuant to employment or other arrangements approved by the Board of Directors of the Corporation with service providers; (ii) redemptions of or dividends or distributions on the Preferred Stock as expressly authorized herein (including, without limitation, Subsection 2.4.2(b) and Subsection 5.1); (iii) dividends or other distributions payable on the Common Stock solely in the form of additional shares of Common Stock; or (iv) the repurchase by the Company of such number of shares of Series A Preferred Stock and a warrant to purchase shares of Common Stock held by Giosis Holdings Incorporated as of the date of the filing of this Certificate of Incorporation;

(g) create, or hold capital stock in, any subsidiary that is not wholly owned (either directly or through one or more other subsidiaries) by the Corporation, or sell, transfer or otherwise dispose of any capital stock of any direct or indirect subsidiary of

the Corporation, or permit any direct or indirect subsidiary to sell, lease, transfer, exclusively license or otherwise dispose (in a single transaction or series of related transactions) of all or substantially all of the assets of such subsidiary; or

(h)     increase or decrease the authorized number of directors constituting the Board of Directors of the Corporation above or below seven (7).

For the purposes of this Second Amended and Restated Certificate of Incorporation, the term "**Marketable Securities**" shall mean securities that are both (x) traded on a national securities exchange or NASDAQ and (y) immediately saleable in full by the holder thereof within 180 days following the initial closing of such Deemed Liquidation Event without restriction as to volume or other limitations imposed by securities laws, rules and regulations.

3.3.2     Series A Preferred Stock Class Protective Provisions. At any time when at least 2,836,680 shares of Series A Preferred Stock (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization) are outstanding, the Corporation shall not (and shall cause any subsidiaries of the Corporation not to), either directly or indirectly by amendment, merger, consolidation or otherwise, do any of the following without (in addition to any other vote required by law or this Second Amended and Restated Certificate of Incorporation) the written consent or affirmative vote of the holders of at least the Requisite Percentage, given in writing or by vote at a meeting, consenting or voting (as the case may be) separately as a class, and any such act or transaction entered into without such consent or vote shall be null and void *ab initio,* and of no force and effect:

(a)     amend, alter or change any provision of this Second Amended and Restated Certificate of Incorporation or the bylaws of the Corporation, as then in effect, in a way that adversely affects the Series A Preferred Stock, including without limitation by amending this Subsection 3.3.2;

(b)     increase or decrease (other than by conversion) the total number of authorized shares of Preferred Stock, Common Stock or any series thereof;

(c)     effect, obligate the Corporation or any subsidiary to effect, a liquidation, dissolution or winding up of the Corporation or a Deemed Liquidation Event unless the holders of Series A Preferred Stock will receive proceeds per share of Series A Preferred Stock at the closing in cash or marketable securities equal to at least five hundred percent (500%) of the Series A Original Issue Price (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization);

(d)     create, or authorize the creation of, or issue or obligate itself to issue shares of, any additional class or series of capital stock, if such issuance would result in a breach of Section 4 of the, Amended and Restated Investor Rights Agreement, dated on or about October 18, 2013 (as amended from time to time, the "IRA"), unless compliance with such provision shall have been waived in writing by the "Investors" named in the IRA;

(e)     reclassify, alter or amend (i) any existing security of the Corporation that is pari passu with the Series A Preferred Stock in respect of the distribution

of assets on the liquidation, dissolution or winding up of the Corporation, the payment of dividends or rights of redemption, if such reclassification, alteration or amendment would render such other security senior to the Series A Preferred Stock in respect of any such right, preference or privilege, or (ii) any existing security of the Corporation that is junior to the Series A Preferred Stock in respect of the distribution of assets on the liquidation, dissolution or winding up of the Corporation, the payment of dividends or rights of redemption, if such reclassification, alteration or amendment would render such other security senior to or pari passu with the Series A Preferred Stock in respect of any such right, preference or privilege;

(f)     purchase or redeem (or permit any subsidiary to purchase or redeem) or pay or declare any dividend or make any distribution on, any shares of capital stock of the Corporation other than (i) redemptions or repurchases pursuant to employment or other arrangements approved by the Board of Directors of the Corporation with service providers; (ii) redemptions of or dividends or distributions on the Preferred Stock as expressly authorized herein (including, without limitation, Subsection 2.4.2(b) or Subsection 5.1); (iii) dividends or other distributions payable on the Common Stock solely in the form of additional shares of Common Stock or (iv) the repurchase by the Company of such number of shares of Series A Preferred Stock held by Giosis Holdings Incorporated as of the date of the filing of this Certificate of Incorporation;

(g)     create, or hold capital stock in, any subsidiary that is not wholly owned (either directly or through one or more other subsidiaries) by the Corporation, or sell, transfer or otherwise dispose of any capital stock of any direct or indirect subsidiary of the Corporation, or permit any direct or indirect subsidiary to sell, lease, transfer, exclusively license or otherwise dispose (in a single transaction or series of related transactions) of all or substantially all of the assets of such subsidiary; or

(h)     increase or decrease the authorized number of directors constituting the Board of Directors of the Corporation above or below seven (7).

4.     Conversion. The holders of the Preferred Stock shall have conversion rights as follows (the "**Conversion Rights**"):

4.1     Right to Convert.

4.1.1     Conversion Ratio. Each share of Preferred Stock shall be convertible, at the option of the holder thereof, at any time and from time to time, and without the payment of additional consideration by the holder thereof, into such number of fully paid and nonassessable shares of Common Stock as is determined by dividing the Original Issue Price for such series by the Conversion Price (as defined below) for such series in effect at the time of conversion. The initial "**Conversion Price**" for each series of Preferred Stock shall be the Original Issue Price for such series, provided that such initial Conversion Price, and the rate at which shares of such series of Preferred Stock may be converted into shares of Common Stock, shall be subject to adjustment as provided below.

4.1.2     Termination of Conversion Rights. In the event of a liquidation, dissolution or winding up of the Corporation or a Deemed Liquidation Event, the Conversion Rights shall terminate at the close of business on the last full day preceding the date

fixed for the payment of any such amounts distributable on such event to the holders of Preferred Stock.

    4.2    Fractional Shares. No fractional shares of Common Stock shall be issued upon conversion of the Preferred Stock. In lieu of any fractional shares to which the holder would otherwise be entitled, the Corporation shall pay cash equal to such fraction multiplied by the fair market value of a share of Common Stock as determined in good faith by the Board of Directors of the Corporation. Whether or not fractional shares would be issuable upon such conversion shall be determined on the basis of the total number of shares of Preferred Stock the holder is at the time converting into Common Stock and the aggregate number of shares of Common Stock issuable upon such conversion.

    4.3    Mechanics of Conversion.

    4.3.1    Notice of Conversion. In order for a holder of Preferred Stock to voluntarily convert shares of Preferred Stock into shares of Common Stock, such holder shall surrender the certificate or certificates for such shares of Preferred Stock (or, if such registered holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate), at the office of the transfer agent for the Preferred Stock (or at the principal office of the Corporation if the Corporation serves as its own transfer agent), together with written notice that such holder elects to convert all or any number of the shares of the Preferred Stock represented by such certificate or certificates and, if applicable, any event on which such conversion is contingent (a "**Contingency Event**"). Such notice shall state such holder's name or the names of the nominees in which such holder wishes the certificate or certificates for shares of Common Stock to be issued. If required by the Corporation, certificates surrendered for conversion shall be endorsed or accompanied by a written instrument or instruments of transfer, in form satisfactory to the Corporation, duly executed by the registered holder or his, her or its attorney duly authorized in writing. The close of business on the date of receipt by the transfer agent (or by the Corporation if the Corporation serves as its own transfer agent) of such certificates (or lost certificate affidavit and agreement) and notice (or, if later, the date on which all Contingency Events have occurred) shall be the time of conversion (the "**Conversion Time**"), and the shares of Common Stock issuable upon conversion of the shares represented by such certificate shall be deemed to be outstanding of record as of such date. The Corporation shall, as soon as practicable after the Conversion Time (i) issue and deliver to such holder of Preferred Stock, or to his, her or its nominees, a certificate or certificates for the number of full shares of Common Stock issuable upon such conversion in accordance with the provisions hereof, and a certificate for the number (if any) of the shares of Preferred Stock represented by the surrendered certificate that were not converted into Common Stock, (ii) pay in cash such amount as provided in Subsection 4.2 in lieu of any fraction of a share of Common Stock otherwise issuable upon such conversion and (iii) pay all declared but unpaid dividends on the shares of Preferred Stock converted.

    4.3.2    Reservation of Shares. The Corporation shall at all times when the Preferred Stock shall be outstanding, reserve and keep available out of its authorized but unissued capital stock, for the purpose of effecting the conversion of the Preferred Stock, such number of its duly authorized shares of Common Stock as shall from time to time be sufficient to effect the conversion of all outstanding Preferred Stock; and if at any time the

number of authorized but unissued shares of Common Stock shall not be sufficient to effect the conversion of all then outstanding shares of the Preferred Stock, the Corporation shall take such corporate action as may be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purposes, including, without limitation, engaging in best efforts to obtain the requisite stockholder approval of any necessary amendment to this Second Amended and Restated Certificate of Incorporation. Before taking any action which would cause an adjustment reducing the Conversion Price below the then par value of the shares of Common Stock issuable upon conversion of the Preferred Stock, the Corporation will take any corporate action which may, in the opinion of its counsel, be necessary in order that the Corporation may validly and legally issue fully paid and nonassessable shares of Common Stock at such adjusted Conversion Price.

      4.3.3  Effect of Voluntary Conversion. All shares of Preferred Stock which shall have been surrendered for conversion as herein provided shall no longer be deemed to be outstanding and all rights with respect to such shares shall immediately cease and terminate at the Conversion Time, except only the right of the holders thereof to receive shares of Common Stock in exchange therefor, to receive payment in lieu of any fraction of a share otherwise issuable upon such conversion as provided in Subsection 4.2 and to receive payment of any dividends declared but unpaid thereon. Any shares of Preferred Stock so converted shall be retired and cancelled and may not be reissued as shares of such series, and the Corporation may thereafter take such appropriate action (without the need for stockholder action) as may be necessary to reduce the authorized number of shares of Preferred Stock accordingly.

      4.3.4  No Further Adjustment. Upon any such conversion, no adjustment to the Conversion Price shall be made for any declared but unpaid dividends on the Preferred Stock surrendered for conversion or on the Common Stock delivered upon conversion.

      4.3.5  Taxes. The Corporation shall pay any and all issue and other similar taxes that may be payable in respect of any issuance or delivery of shares of Common Stock upon conversion of shares of Preferred Stock pursuant to this Section 4. The Corporation shall not, however, be required to pay any tax which may be payable in respect of any transfer involved in the issuance and delivery of shares of Common Stock in a name other than that in which the shares of Preferred Stock so converted were registered, and no such issuance or delivery shall be made unless and until the person or entity requesting such issuance has paid to the Corporation the amount of any such tax or has established, to the satisfaction of the Corporation, that such tax has been paid.

    4.4  Adjustments to Conversion Price for Diluting Issuances.

      4.4.1  Special Definitions. For purposes of this Article FOURTH, the following definitions shall apply:

        (a)  "**Additional Shares of Common Stock**" shall mean all shares of Common Stock issued (or, pursuant to Subsection 4.4.3 below, deemed to be issued) by the Corporation after the Filing Date, other than the following shares of Common Stock, and shares of Common Stock deemed issued pursuant to the following Options and Convertible Securities (collectively, "**Exempted Securities**"):

(i)     shares of Common Stock, Options or Convertible Securities issued as a dividend or distribution on the Preferred Stock;

(ii)    shares of Common Stock, Options or Convertible Securities issued by reason of a dividend, stock split, split-up or other distribution on shares of Common Stock that is covered by Subsection 4.5, 4.6, 4.7 or 4.8;

(iii)   shares of Common Stock, or Options, issued to employees or directors of, or consultants or advisors to, the Corporation or any of its subsidiaries, pursuant to a plan, agreement or arrangement approved by the Board of Directors of the Corporation;

(iv)    shares of Common Stock or Convertible Securities actually issued upon the exercise of Options or shares of Common Stock actually issued upon the conversion or exchange of Convertible Securities (including any issuance as a result of a decrease in the Conversion Price or any series of Preferred Stock) in each case provided such issuance is pursuant to the terms of such Option or Convertible Security;

(v)     shares of Common Stock, Options or Convertible Securities issued to banks, equipment lessors or other financial institutions, or to real property lessors, pursuant to a debt financing, equipment leasing, real property leasing transactions, or to other persons or entities with which the Corporation has business relationships, provided that the principal purpose of any such issuances under this clause (v) is not an equity financing and has been approved by the Board of Directors of the Corporation;

(vi)    shares of Common Stock, Options or Convertible Securities issued (A) pursuant to the acquisition of another bona fide commercially operating business entity by the Corporation by merger, purchase of substantially all of the assets or other reorganization (B) the IPO (as defined below), provided that such issuances are

approved by the Board of Directors of the Corporation; and

(vii) shares of Common Stock issuable upon the exercise of certain warrants outstanding on the Filing Date and disclosed in writing to the purchasers of Series B Preferred Stock prior to the first issuance of any shares of Series B Preferred Stock.

(b) **"Convertible Securities"** shall mean any evidences of indebtedness, shares or other securities directly or indirectly convertible into or exchangeable for Common Stock, but excluding Options.

(c) **"Filing Date"** shall mean the date on which this Second Amended and Restated Certificate of Incorporation is accepted for filing by the Secretary of State of the State of Delaware.

(d) **"Options"** shall mean rights, options or warrants to subscribe for, purchase or otherwise acquire Common Stock or Convertible Securities.

4.4.2 No Adjustment of Conversion Price. No adjustment in the Conversion Price of the Series B Preferred Stock or Series A Preferred Stock shall be made as the result of the issuance or deemed issuance of Additional Shares of Common Stock if the Corporation receives written notice from the Required Series B Holders with respect to the Series B Preferred Stock and/or the Required Series A Holders with respect to the Series A Preferred Stock, agreeing that no such adjustment shall be made to the Conversion Price for such series as the result of the issuance or deemed issuance of such Additional Shares of Common Stock.

4.4.3 Deemed Issue of Additional Shares of Common Stock.

(a) If the Corporation at any time or from time to time after the Filing Date shall issue any Options or Convertible Securities (excluding Options or Convertible Securities which are themselves Exempted Securities) or shall fix a record date for the determination of holders of any class of securities entitled to receive any such Options or Convertible Securities, then the maximum number of shares of Common Stock (as set forth in the instrument relating thereto, assuming the satisfaction of any conditions to exercisability, convertibility or exchangeability but without regard to any provision contained therein for a subsequent adjustment of such number) issuable upon the exercise of such Options or, in the case of Convertible Securities and Options therefor, the conversion or exchange of such Convertible Securities, shall be deemed to be Additional Shares of Common Stock issued as of the time of such issue or, in case such a record date shall have been fixed, as of the close of business on such record date.

(b) If the terms of any Option or Convertible Security, the issuance of which resulted in an adjustment to the Conversion Price pursuant to the terms of Subsection 4.4.4, are revised as a result of an amendment to such terms or any other adjustment pursuant to the provisions of such Option or Convertible Security (but excluding automatic

adjustments to such terms pursuant to anti-dilution or similar provisions of such Option or Convertible Security) to provide for either (1) any increase or decrease in the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any such Option or Convertible Security or (2) any increase or decrease in the consideration payable to the Corporation upon such exercise, conversion and/or exchange, then, effective upon such increase or decrease becoming effective, the Conversion Price computed upon the original issue of such Option or Convertible Security (or upon the occurrence of a record date with respect thereto) shall be readjusted to such Conversion Price as would have obtained had such revised terms been in effect upon the original date of issuance of such Option or Convertible Security. Notwithstanding the foregoing, no readjustment pursuant to this clause (b) shall have the effect of increasing the Conversion Price to an amount which exceeds the lower of (i) the Conversion Price in effect immediately prior to the original adjustment made as a result of the issuance of such Option or Convertible Security, or (ii) the Conversion Price that would have resulted from any issuances of Additional Shares of Common Stock (other than deemed issuances of Additional Shares of Common Stock as a result of the issuance of such Option or Convertible Security) between the original adjustment date and such readjustment date.

(c)     If the terms of any Option or Convertible Security (excluding Options or Convertible Securities which are themselves Exempted Securities), the issuance of which did not result in an adjustment to the Conversion Price pursuant to the terms of Subsection 4.4.4 (either because the consideration per share (determined pursuant to Subsection 4.4.5) of the Additional Shares of Common Stock subject thereto was equal to or greater than the Conversion Price then in effect, or because such Option or Convertible Security was issued before the Filing Date), are revised after the Filing Date as a result of an amendment to such terms or any other adjustment pursuant to the provisions of such Option or Convertible Security (but excluding automatic adjustments to such terms pursuant to anti-dilution or similar provisions of such Option or Convertible Security) to provide for either (1) a change in the number of shares of Common Stock issuable upon the exercise, conversion or exchange of any such Option or Convertible Security or (2) a change in the consideration payable to the Corporation upon such exercise, conversion and/or exchange, then such Option or Convertible Security, as so amended or adjusted, and the Additional Shares of Common Stock subject thereto (determined in the manner provided in Subsection 4.4.3(a)) shall be deemed to have been issued effective upon such change becoming effective.

(d)     Upon the expiration or termination of any unexercised Option or unconverted or unexchanged Convertible Security (or portion thereof) which resulted (either upon its original issuance or upon a revision of its terms) in an adjustment to the Conversion Price pursuant to the terms of Subsection 4.4.4, the Conversion Price shall be readjusted to such Conversion Price as would have obtained had such Option or Convertible Security (or portion thereof) never been issued.

(e)     If the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any Option or Convertible Security, or the consideration payable to the Corporation upon such exercise, conversion and/or exchange, is calculable at the time such Option or Convertible Security is issued or amended but is subject to adjustment based upon subsequent events, any adjustment to the Conversion Price provided for in this Subsection 4.4.3 shall be effected at the time of such issuance or amendment based on such number of shares or amount of consideration without regard to any provisions for

subsequent adjustments (and any subsequent adjustments shall be treated as provided in clauses (b) and (c) of this Subsection 4.4.3). If the number of shares of Common Stock issuable upon the exercise, conversion and/or exchange of any Option or Convertible Security, or the consideration payable to the Corporation upon such exercise, conversion and/or exchange, cannot be calculated at all at the time such Option or Convertible Security is issued or amended, any adjustment to the Conversion Price that would result under the terms of this Subsection 4.4.3 at the time of such issuance or amendment shall instead be effected at the time such number of shares and/or amount of consideration is first calculable (even if subject to subsequent adjustments), assuming for purposes of calculating such adjustment to the Conversion Price that such issuance or amendment took place at the time the such calculation can first be made.

                4.4.4    Adjustment of Conversion Price Upon Issuance of Additional Shares of Common Stock. In the event the Corporation shall at any time after the Filing Date issue Additional Shares of Common Stock (including Additional Shares of Common Stock deemed to be issued pursuant to Subsection 4.4.3), without consideration or for a consideration per share less than the Conversion Price for any series of Preferred Stock in effect immediately prior to such issue, then the Conversion Price for such series of Preferred Stock shall be reduced, concurrently with such issue, to a price (calculated to the nearest one-hundredth of a cent) determined in accordance with the following formula:

$$CP_2 = CP_1 * (A + B) \div (A + C).$$

For purposes of the foregoing formula, the following definitions shall apply:

                (a)     "$CP_2$" shall mean the Conversion Price for the affected series of Preferred Stock in effect immediately after such issue or deemed issue of Additional Shares of Common Stock

                (b)     "$CP_1$" shall mean the Conversion Price for the affected series of Preferred Stock in effect immediately prior to such issue or deemed issue of Additional Shares of Common Stock;

                (c)     "A" shall mean the number of shares of Common Stock outstanding immediately prior to such issue or deemed issue of Additional Shares of Common Stock (treating for this purpose as outstanding all shares of Common Stock issuable upon exercise of Options outstanding immediately prior to such issue or deemed issue or upon conversion or exchange of Convertible Securities (including the Preferred Stock) outstanding (assuming exercise of any outstanding Options therefor) immediately prior to such issue);

                (d)     "B" shall mean the number of shares of Common Stock that would have been issued if such Additional Shares of Common Stock had been issued or deemed issued at a price per share equal to $CP_1$ (determined by dividing the aggregate consideration received by the Corporation in respect of such issue by $CP_1$); and

                (e)     "C" shall mean the number of such Additional Shares of Common Stock issued in such transaction.

{00109298 8}

18

4.4.5     Determination of Consideration.     For purposes of this
Subsection 4.4, the consideration received by the Corporation for the issue or deemed issue of
any Additional Shares of Common Stock shall be computed as follows:

- (a)     Cash and Property: Such consideration shall:

  - (i)     insofar as it consists of cash, be computed at
    the aggregate amount of cash received by the
    Corporation, excluding amounts paid or
    payable for accrued interest;

  - (ii)    insofar as it consists of property other than
    cash, be computed at the fair market value
    thereof at the time of such issue, as
    determined in good faith by the Board of
    Directors of the Corporation; and

  - (iii)   in the event Additional Shares of Common
    Stock are issued together with other shares or
    securities or other assets of the Corporation
    for consideration which covers both, be the
    proportion of such consideration so received,
    computed as provided in clauses (i) and (ii)
    above, as determined in good faith by the
    Board of Directors of the Corporation.

(b)     Options     and    Convertible    Securities.     The
consideration per share received by the Corporation for Additional Shares of Common Stock
deemed to have been issued pursuant to Subsection 4.4.3, relating to Options and Convertible
Securities, shall be determined by dividing:

  - (i)     the total amount, if any, received or
    receivable    by    the    Corporation    as
    consideration for the issue of such Options or
    Convertible Securities, plus the minimum
    aggregate amount of additional consideration
    (as set forth in the instruments relating
    thereto, without regard to any provision
    contained therein for a subsequent adjustment
    of such consideration) payable to the
    Corporation upon the exercise of such
    Options or the conversion or exchange of
    such Convertible Securities, or in the case of
    Options for Convertible Securities, the
    exercise of such Options for Convertible
    Securities and the conversion or exchange of
    such Convertible Securities, by

(ii)    the maximum number of shares of Common Stock (as set forth in the instruments relating thereto, without regard to any provision contained therein for a subsequent adjustment of such number) issuable upon the exercise of such Options or the conversion or exchange of such Convertible Securities, or in the case of Options for Convertible Securities, the exercise of such Options for Convertible Securities and the conversion or exchange of such Convertible Securities.

4.4.6    Multiple Closing Dates. In the event the Corporation shall issue on more than one date Additional Shares of Common Stock that are a part of one transaction or a series of related transactions and that would result in an adjustment to the Conversion Price pursuant to the terms of Subsection 4.4.4, and such issuance dates occur within a period of no more than 90 days from the first such issuance to the final such issuance, then, upon the final such issuance, the Conversion Price shall be readjusted to give effect to all such issuances as if they occurred on the date of the first such issuance (and without giving effect to any additional adjustments as a result of any such subsequent issuances within such period that are a part of one transaction or a series of related transactions).

4.5    Adjustment for Stock Splits and Combinations. If the Corporation shall at any time or from time to time after the Filing Date effect a subdivision of the outstanding Common Stock, then the Conversion Price in effect immediately before that subdivision shall be proportionately decreased so that the number of shares of Common Stock issuable on conversion of each share of such series shall be increased in proportion to such increase in the aggregate number of shares of Common Stock outstanding. If the Corporation shall at any time or from time to time after the Filing Date combine the outstanding shares of Common Stock, then the Conversion Price in effect immediately before the combination shall be proportionately increased so that the number of shares of Common Stock issuable on conversion of each share of such series shall be decreased in proportion to such decrease in the aggregate number of shares of Common Stock outstanding. Any adjustment under this subsection shall become effective at the close of business on the date the subdivision or combination becomes effective.

4.6    Adjustment for Certain Dividends and Distributions. In the event the Corporation at any time or from time to time after the Filing Date shall make or issue, or fix a record date for the determination of holders of Common Stock entitled to receive, a dividend or other distribution payable on the Common Stock in additional shares of Common Stock, then and in each such event the Conversion Price applicable to each series of Preferred Stock in effect immediately before such event shall be decreased as of the time of such issuance or, in the event such a record date shall have been fixed, as of the close of business on such record date, by multiplying the Conversion Price then in effect by a fraction:

(i)    the numerator of which shall be the total number of shares of Common Stock issued and outstanding immediately prior to the time of such issuance or the close of business on such record date, and

(ii)     the denominator of which shall be the total
number of shares of Common Stock issued
and outstanding immediately prior to the time
of such issuance or the close of business on
such record date plus the number of shares of
Common Stock issuable in payment of such
dividend or distribution.

Notwithstanding the foregoing, (a) if such record date shall have been fixed and such dividend is
not fully paid or if such distribution is not fully made on the date fixed therefor, the Conversion
Price shall be recomputed accordingly as of the close of business on such record date and
thereafter the Conversion Price shall be adjusted pursuant to this subsection as of the time of
actual payment of such dividends or distributions; and (b) no such adjustment shall be made if
the holders of the applicable series of Preferred Stock simultaneously receive a dividend or other
distribution of shares of Common Stock in a number equal to the number of shares of Common
Stock as they would have received if all outstanding shares of the applicable series of Preferred
Stock had been converted into Common Stock on the date of such event.

4.7     Adjustments for Other Dividends and Distributions. In the event the
Corporation at any time or from time to time after the Filing Date shall make or issue, or fix a
record date for the determination of holders of Common Stock entitled to receive, a dividend or
other distribution payable in securities of the Corporation (other than a distribution of shares of
Common Stock in respect of outstanding shares of Common Stock) or in other property and the
provisions of Section 1 do not apply to such dividend or distribution, then and in each such event
the holders of Preferred Stock shall receive, simultaneously with the distribution to the holders of
Common Stock, a dividend or other distribution of such securities or other property in an amount
equal to the amount of such securities or other property as they would have received if all
outstanding shares of Preferred Stock had been converted into Common Stock on the date of
such event.

4.8     Adjustment for Merger or Reorganization, etc. If there shall occur any
reorganization, recapitalization, reclassification, consolidation or merger involving the
Corporation (other than a transaction covered by Subsections 4.4, 4.6 or 4.7 or a transaction
provided for in Section 2) in which the Common Stock (but not the Preferred Stock or any series
thereof) is converted into or exchanged for securities, cash or other property, then, following any
such reorganization, recapitalization, reclassification, consolidation or merger, each share of
Preferred Stock not so converted or exchanged shall thereafter be convertible in lieu of the
Common Stock into which it was convertible prior to such event into the kind and amount of
securities, cash or other property which a holder of the number of shares of Common Stock of
the Corporation issuable upon conversion of the applicable share of Preferred Stock immediately
prior to such reorganization, recapitalization, reclassification, consolidation or merger would
have been entitled to receive pursuant to such transaction; and, in such case, appropriate
adjustment (as determined in good faith by the Board of Directors of the Corporation shall be
made in the application of the provisions in this Section 4 with respect to the rights and interests
thereafter of the holders of the applicable series of Preferred Stock, to the end that the provisions
set forth in this Section 4 (including provisions with respect to changes in and other adjustments
of the applicable Conversion Price) shall thereafter be applicable, as nearly as reasonably may
be, in relation to any securities or other property thereafter deliverable upon the conversion of the

applicable Preferred Stock. For the avoidance of doubt, nothing in this Subsection 4.8 shall be construed as preventing the holders of Preferred Stock from seeking any appraisal rights to which they are otherwise entitled under the DGCL in connection with a merger triggering an adjustment hereunder, nor shall this Subsection 4.8 be deemed conclusive evidence of the fair value of the shares of Preferred Stock in any such appraisal proceeding.

4.9     Certificate as to Adjustments. Upon the occurrence of each adjustment or readjustment of the Conversion Price pursuant to this Section 4, the Corporation at its expense shall, as promptly as reasonably practicable but in any event not later than 10 days thereafter, compute such adjustment or readjustment in accordance with the terms hereof and furnish to each holder of Preferred Stock a certificate setting forth such adjustment or readjustment (including the kind and amount of securities, cash or other property into which the applicable Preferred Stock is convertible) and showing in detail the facts upon which such adjustment or readjustment is based. The Corporation shall, as promptly as reasonably practicable after the written request at any time of any holder of Preferred Stock (but in any event not later than 10 days thereafter), furnish or cause to be furnished to such holder a certificate setting forth (i) the applicable Conversion Price then in effect, and (ii) the number of shares of Common Stock and the amount, if any, of other securities, cash or property which then would be received upon the conversion of the applicable Preferred Stock.

4.10     Notice of Record Date. In the event:

(a)     the Corporation shall take a record of the holders of its Common Stock (or other capital stock or securities at the time issuable upon conversion of the Preferred Stock) for the purpose of entitling or enabling them to receive any dividend or other distribution, or to receive any right to subscribe for or purchase any shares of capital stock of any class or any other securities, or to receive any other security; or

(b)     of any capital reorganization of the Corporation, any reclassification of the Common Stock of the Corporation, or any Deemed Liquidation Event; or

(c)     of the voluntary or involuntary dissolution, liquidation or winding-up of the Corporation,

then, and in each such case, the Corporation will send or cause to be sent to the holders of the Preferred Stock a notice specifying, as the case may be, (i) the record date for such dividend, distribution or right, and the amount and character of such dividend, distribution or right, or (ii) the effective date on which such reorganization, reclassification, consolidation, merger, transfer, dissolution, liquidation or winding-up is proposed to take place, and the time, if any is to be fixed, as of which the holders of record of Common Stock (or such other capital stock or securities at the time issuable upon the conversion of the Preferred Stock) shall be entitled to exchange their shares of Common Stock (or such other capital stock or securities) for securities or other property deliverable upon such reorganization, reclassification, consolidation, merger, transfer, dissolution, liquidation or winding-up, and the amount per share and character of such exchange applicable to each series of Preferred Stock and the Common Stock. Such notice shall be sent at least 10 days prior to the record date or effective date for the event specified in such notice.

#### 4.11 Mandatory Conversion.

4.11.1 Trigger Events. Upon either (a) the closing of the sale of shares of Common Stock to the public at a price per share equal to at least $17.865944 (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization) in a firm-commitment underwritten public offering pursuant to an effective registration statement under the Securities Act raising net proceeds to the Corporation of at least $100,000,000 (a "**Qualified Public Offering**"), or (b) the date and time, or the occurrence of an event, specified by vote or written consent of (x) the Required Series B Holders (with respect only to the Series B Preferred Stock) and/or (y) the Required Series A Holders (with respect only to the Series A Preferred Stock) (the time of such closing or the date and time specified or the time of the event specified in such vote or written consent is referred to herein as the "**Mandatory Conversion Time**"), (i) all outstanding shares of Preferred Stock shall automatically be converted into shares of Common Stock, at the then effective conversion rate, and (ii) such shares of Preferred Stock may not be reissued by the Corporation.

4.11.2 Procedural Requirements. All holders of record of shares of Preferred Stock shall be sent written notice of the Mandatory Conversion Time and the place designated for mandatory conversion of all such shares of Series A Preferred Stock pursuant to this Subsection 4.11. Such notice need not be sent in advance of the occurrence of the Mandatory Conversion Time. Upon receipt of such notice, each holder of shares of Preferred Stock shall surrender his, her or its certificate or certificates for all such shares (or, if such holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate) to the Corporation at the place designated in such notice. If so required by the Corporation, certificates surrendered for conversion shall be endorsed or accompanied by written instrument or instruments of transfer, in form reasonably satisfactory to the Corporation, duly executed by the registered holder or by his, her or its attorney duly authorized in writing. All rights with respect to the Preferred Stock converted pursuant to Subsection 4.11, including the rights, if any, to receive notices and vote (other than as a holder of Common Stock), will terminate at the Mandatory Conversion Time (notwithstanding the failure of the holder or holders thereof to surrender the certificates at or prior to such time), except only the rights of the holders thereof, upon surrender of their certificate or certificates (or lost certificate affidavit and agreement) therefor, to receive the items provided for in the next sentence of this Subsection 4.11. If a conversion pursuant to this Subsection 4.11 is contingent upon the closing of an underwritten public offering, such conversion shall be deemed to have been effected immediately prior to the closing with the underwriters of the sale of securities pursuant to such offering. If the conversion is in connection with Subsection 4.11.1(b) above, such conversion shall be deemed to have been effected on the conversion date described in the stockholder consent approving such conversion, and the persons entitled to receive shares of Common Stock issuable upon such conversion shall be treated for all purposes as the record holders of such shares of Common Stock as of such date. As soon as practicable after the Mandatory Conversion Time and the surrender of the certificate or certificates (or lost certificate affidavit and agreement) for Preferred Stock, the Corporation shall issue and deliver to such holder, or to his, her or its nominees, a certificate or certificates for the number of full shares of Common Stock issuable on such conversion in accordance with the provisions hereof, together with cash as provided in Subsection 4.2 in lieu of any fraction of a share of Common Stock

otherwise issuable upon such conversion and the payment of any accrued but unpaid dividends on the shares of Preferred Stock converted. Such converted Preferred Stock shall be retired and cancelled and may not be reissued as shares of such series, and the Corporation may thereafter take such appropriate action (without the need for stockholder action) as may be necessary to reduce the authorized number of shares of Preferred Stock accordingly.

4.12    Special Adjustment for Certain Initial Public Offerings. If, and only if, (a) the Corporation issues or sells shares of Common Stock in a public offering pursuant to an effective registration statement under the Securities Act (an "**IPO**") and (b) the price per share to the public in such IPO (the "**IPO Price**") is less than $17.865944 (subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other similar recapitalization), then the Conversion Price applicable to the Series B Preferred Stock (the "**Series B Conversion Price**") in effect immediately prior to such IPO (without giving effect to any adjustment pursuant to this Subsection 4.12) shall be adjusted to such price as shall entitle each holder of Series B Preferred Stock to receive, upon conversion thereof, a number of shares of Common Stock as shall equal the quotient of (i) $17.865944 and (ii) the IPO Price. The adjustments set forth in this Subsection 4.12 shall be effective as of immediately prior to, and shall be subject to, the closing of the IPO and shall be reflected in calculating the number of shares of Common Stock issuable upon conversion of each share of Series B Preferred Stock upon consummation of the IPO.

5.    Redemption

5.1    General. Unless prohibited by Delaware law governing distributions to stockholders, shares of Series B Preferred Stock shall be redeemed by the Corporation at a price equal to the greater of (A) the Series B Original Issue Price, plus any accrued but unpaid Series B Accruing Dividends, and (B) the Fair Market Value (determined in the manner set forth below) of a single share of Series B Preferred Stock as of the date of the Company's receipt of the Redemption Request (the "**Redemption Price**"), at a closing to occur not more than ninety (90) days following the determination of the Fair Market Value of a single share of Series B Preferred Stock in accordance with this Subsection 5.1 after receipt by the Corporation at any time on or after October 18, 2018, from the Required Series B Holders, of written notice requesting redemption of at least a majority of the shares of Series B Preferred Stock then outstanding (the "**Redemption Request**"). Upon receipt of a Redemption Request, the Corporation shall apply all of its assets to any such redemption, and to no other corporate purpose, except to the extent prohibited by Delaware law governing distributions to stockholders. For purposes of this Subsection 5.1, the Fair Market Value of a single share of Series B Preferred Stock shall be the value of a single share of Series B Preferred Stock mutually agreed upon by the Company and the Required Series B Holders, and, in the event that they are unable to reach agreement, by a third-party appraiser agreed to by the Company and the Required Series B Holders; provided that if the Company and the Required Series B Holders cannot agree upon a third-party appraiser, each of the Company and the Required Series B Holders shall appoint a third-party appraiser and their respective appointees shall mutually select a third-party appraiser who shall make the final determination of the Fair Market Value of a single share of Series B Preferred Stock. The date of such redemption closing shall be referred to as the "**Redemption Date**." On the Redemption Date, the Corporation shall redeem all outstanding shares of Series B Preferred Stock for which redemption has been requested pursuant to this Subsection 5.1. If on the Redemption Date Delaware law governing distributions to stockholders prevents the

Corporation from redeeming all outstanding shares of Series B Preferred Stock, the Corporation shall ratably redeem the maximum number of shares that it may redeem consistent with such law, and shall redeem the remaining shares as soon as it may lawfully do so under such law.

5.2     Redemption Notice. The Corporation shall send written notice of the redemption (the "**Redemption Notice**") to each holder of record of Series B Preferred Stock not less than forty (40) days prior to the Redemption Date. The Redemption Notice shall state:

(a)     the number of shares of Series B Preferred Stock held by the holder that the Corporation shall redeem on the Redemption Date specified in the Redemption Notice, subject to Subsection 5.2(e);

(b)     the Redemption Date and the Redemption Price;

(c)     the date upon which the holder's right to convert such shares terminates (as determined in accordance with Subsection 4.1), subject to Subsection 5.2(e); and

(d)     for holders of shares in certificated form, that the holder is to surrender to the Corporation, in the manner and at the place designated, his, her or its certificate or certificates representing the shares of Series B Preferred Stock to be redeemed; and

(e)     that the holder may elect to not participate in any such redemption and to retain such holder's shares of Series B Preferred Stock upon written notice to the Company.

5.3     Surrender of Certificates; Payment. On or before the Redemption Date, each holder of shares of Series B Preferred Stock to be redeemed on the Redemption Date, unless such holder has (i) exercised his, her or its right to convert such shares as provided in Section 4 or (ii) delivered written notice to the Company not less than twenty (20) days prior to the Redemption Date of its election not to participate in such redemption, shall, if a holder of shares in certificated form, surrender the certificate or certificates representing such shares (or, if such registered holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate) to the Corporation, in the manner and at the place designated in the Redemption Notice, and thereupon the Redemption Price for such shares shall be payable to the order of the person whose name appears on such certificate or certificates as the owner thereof. In the event less than all of the shares of Series B Preferred Stock represented by a certificate are redeemed, a new certificate, instrument, or book entry representing the unredeemed shares of Series B Preferred Stock shall promptly be issued to such holder.

5.4     Rights Subsequent to Redemption. If the Redemption Notice shall have been duly given, and if on the applicable Redemption Date the Redemption Price payable upon redemption of the shares of Series B Preferred Stock to be redeemed on such Redemption Date is paid or tendered for payment or deposited with an independent payment agent so as to be available therefor in a timely manner, then notwithstanding that any certificates evidencing any of the shares of Series B Preferred Stock so called for redemption shall not have been

surrendered, dividends with respect to such shares of Series B Preferred Stock shall cease to accrue after such Redemption Date and all rights with respect to such shares shall forthwith after the Redemption Date terminate, except only the right of the holders to receive the Redemption Price without interest upon surrender of any such certificate or certificates therefor. For the avoidance of doubt, any holder of Series B Preferred Stock who shall have elected to not redeem some or all of such holder's shares of Series B Preferred Stock will be deemed to have irrevocably waived its rights under this Section 5 to request redemption of such holder's shares of Series B Preferred Stock.

6.      Redeemed or Otherwise Acquired Shares. Any shares of Preferred Stock that are redeemed or otherwise acquired by the Corporation or any of its subsidiaries shall be automatically and immediately cancelled and retired and shall not be reissued, sold or transferred. Neither the Corporation nor any of its subsidiaries may exercise any voting or other rights granted to the holders of Preferred Stock following redemption.

7.      Waiver. Any of the rights, powers, preferences and other terms of the Series B Preferred Stock set forth herein may be waived on behalf of all holders of Series B Preferred Stock by the affirmative written consent or vote of the Required Series B Holders. Any of the rights, powers, preferences and other terms of the Series A Preferred Stock set forth herein may be waived on behalf of all holders of Series A Preferred Stock by the affirmative written consent or vote of the Required Series A Holders.

8.      Notices. Any notice required or permitted by the provisions of this Article FOURTH to be given to a holder of shares of Preferred Stock shall be mailed, postage prepaid, to the post office address last shown on the records of the Corporation, or given by electronic communication in compliance with the provisions of the General Corporation Law, and shall be deemed sent upon such mailing or electronic transmission.

**FIFTH:**      Subject to any additional vote required by this Second Amended and Restated Certificate of Incorporation or Bylaws, in furtherance and not in limitation of the powers conferred by statute, the Board of Directors is expressly authorized to make, repeal, alter, amend and rescind any or all of the Bylaws of the Corporation.

**SIXTH:**      Subject to the terms of this Second Amended and Restated Certificate of Incorporation, the number of directors of the Corporation shall be determined in the manner set forth in the Bylaws of the Corporation.

**SEVENTH:** Elections of directors need not be by written ballot unless the Bylaws of the Corporation shall so provide.

**EIGHTH:**      Meetings of stockholders may be held within or without the State of Delaware, as the Bylaws of the Corporation may provide. The books of the Corporation may be kept outside the State of Delaware at such place or places as may be designated from time to time by the Board of Directors or in the Bylaws of the Corporation.

**NINTH:**      To the fullest extent permitted by law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. If the General Corporation Law or any other law of the State of Delaware is amended after approval by the stockholders of this Article Ninth to

authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the General Corporation Law as so amended.

Any amendment, repeal or modification of the foregoing provisions of this Article Ninth by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation existing at the time of, or increase the liability of any director of the Corporation with respect to any acts or omissions of such director occurring prior to, such amendment, repeal or modification.

**TENTH:** To the fullest extent permitted by applicable law, the Corporation is authorized to provide indemnification of (and advancement of expenses to) directors, officers and agents of this Corporation (and any other persons to which General Corporation Law permits the Corporation to provide indemnification) through Bylaw provisions, agreements with such directors, officers or agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by Section 145 of the General Corporation Law.

Any amendment, repeal or modification of the foregoing provisions of this Article TENTH shall not (a) adversely affect any right or protection of a director, officer or other agent of the Corporation existing at the time of such amendment, repeal or modification, or (b) increase the liability of any director of the Corporation with respect to any acts or omissions of such director, officer or agent occurring prior to, such amendment, repeal or modification.

**ELEVENTH:** The Corporation renounces, to the fullest extent permitted by law, any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, any Excluded Opportunity. An "**Excluded Opportunity**" is any matter, transaction or interest that is presented to, or acquired, created or developed by, or which otherwise comes into the possession of, (i) any director of the Corporation who is not an employee of the Corporation or any of its subsidiaries, or (ii) any holder of Series A Preferred Stock or Series B Preferred Stock, or any partner, member, director, stockholder, employee or agent of any such holder, other than someone who is an employee of the Corporation or any of its subsidiaries (collectively, "**Covered Persons**"), unless such matter, transaction or interest is presented to, or acquired, created or developed by, or otherwise comes into the possession of, a Covered Person expressly and solely in such Covered Person's capacity as a director of the Corporation

**TWELFTH:** Whenever a compromise or arrangement is proposed between the Corporation and its creditors or any class of them and/or between the Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of the Corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for the Corporation under the provisions of §291 of Title 8 of the General Corporation Law or on the application of trustees in dissolution or of any receiver or receivers appointed for this Corporation under §279 of Title 8 of the General Corporation Law order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of the Corporation (together with any additional stockholder approvals set forth in Section B.3 of Article FOURTH), as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three-fourths in value of the creditors or class of creditors,

and/or of the stockholders or class of stockholders of the Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of the Corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of the Corporation, as the case may be, and also on the Corporation.

\*   \*   \*

3.     That the foregoing amendment and restatement was approved by the holders of the requisite number of shares of this corporation in accordance with Section 228 of the General Corporation Law.

4.     That this Second Amended and Restated Certificate of Incorporation, which restates and integrates and further amends the provisions of this corporation's Amended and Restated Certificate of Incorporation, as amended, has been duly adopted in accordance with Sections 242 and 245 of the General Corporation Law.

**IN WITNESS WHEREOF,** this Second Amended and Restated Certificate of Incorporation has been executed by a duly authorized officer of this corporation on this 13 day of October, 2013.

By: _____

Deepak Agarwal, President

29